Hermilio HERRERO, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–02–00534–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 9, 2003.

---

Dan Cogdell, Houston, for appellants.

Dan McCrory, Houston, for appellees.

Panel consists of Justices YATES, HUDSON, and KEM THOMPSON FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Hermilio Herrero, Jr. appeals his murder conviction, arguing (1) the evidence is insufficient to establish the corpus delicti of murder independent of appellant's extrajudicial confession; (2)-(3) the evidence is legally and factually insufficient to support his conviction; and (4) the trial court abused its discretion when it denied appellant's motion for mistrial following a witness's statement that he was promised protection from appellant's death threat in exchange for his testimony. We affirm.

**1.** Detective Curtis Brown from the Harris County Sheriff's Department testified that he questioned Guajardo's wife about "[b]oth individuals that he was last seen with." However, according to her testimony, Guajardo left home with only Hernandez on the morning of January 5, 1995.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 1995, Albert Guajardo's dead body was discovered inside a rolled carpet, which was wrapped in plastic, tied with a rope, and left on a street near a ditch. Guajardo's wife told police she had last seen her husband approximately four days earlier when he left the house around 7:00 a.m. with a man named Freddie Hernandez.[1] According to her testimony, Hernandez and appellant, whom she referred to as "Millie," came to the Guajardo home the previous afternoon; Albert Guajardo left with them briefly and then returned home. Guajardo's wife provided police with descriptions of both appellant and Hernandez during the investigation. Detective Curtis Brown from the Harris County Sheriff's Department attempted to interview Hernandez; however, he refused to answer questions. Appellant agreed to answer questions and to a search of his home. The search did not produce any evidence of the crime.

Approximately five years later, Jesse Moreno contacted Kelly Siegler, an assistant district attorney with the Harris County District Attorney's Office. Moreno claimed he had information about the case. Moreno had been in a Beaumont federal prison with appellant and testified that appellant told him and other inmates that appellant killed Guajardo because Guajardo owed appellant money for drugs. Rafael Dominguez, also a prison inmate, contacted Siegler with similar information, claiming appellant had bragged about killing Guajardo to a group of inmates in the recreation yard on a separate occasion. Appellant was then charged by indictment with Guajardo's murder.[2] *See* TEX. PEN.

**2.** The indictment included an enhancement paragraph, which referenced appellant's 1989 conviction for aggravated assault. The trial court found the enhancement paragraph true when assessing punishment.

CODE ANN. § 19.02 (Vernon 1994). A jury found appellant guilty and the trial court sentenced him to life imprisonment in the Texas Department of Criminal Justice, Institutional Division and assessed a $10,000 fine.

## II. ISSUES PRESENTED

Appellant presents the following issues for review:

(1) Is the evidence sufficient to establish the corpus delicti of murder independent of appellant's extrajudicial confession?

(2) Is the evidence legally sufficient to support appellant's murder conviction?

(3) Is the evidence factually sufficient to support appellant's murder conviction?

(4) Was appellant entitled to a mistrial because a witness improperly testified that he was promised protection from appellant's death threat in exchange for his testimony?

## III. ANALYSIS AND DISCUSSION

**A. Is the evidence sufficient to establish the corpus delicti of murder independent of appellant's extrajudicial confession?**

■ In his second issue, appellant contends that his extrajudicial confession alone is insufficient to establish the corpus delicti of murder absent physical evidence linking him to the crime.

■ Appellant is correct that an extrajudicial confession, standing alone, is insufficient to support a conviction without other evidence showing that a crime has in fact been committed. *See Salazar v. State*, 86 S.W.3d 640, 644 (Tex.Crim.App.2002). Appellant argues that the evidence must demonstrate that he was the person who committed the murder. However, the identity of the perpetrator of the crime is not an element of the corpus delicti; the inquiry focuses only on the harm brought about by the criminal conduct of some person. *See id.* The purpose of the corroboration requirement is to ensure that a person confessing to a crime is not convicted without independent evidence that the crime actually occurred. *Id.* Therefore, the corpus delicti rule is satisfied if some evidence exists outside of the extrajudicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred. *Id.* at 645.

■ The corpus delicti of murder is established by a showing of (a) the death of a human being (b) caused by the criminal act of another. *Fisher v. State*, 851 S.W.2d 298, 303 (Tex.Crim.App.1993). In this case, police were notified when residents partially unrolled a carpet lying on the side of the road and discovered human feet. When police arrived, they opened the carpet to find a man's body laying face down. Police identified the victim as Albert Guajardo through fingerprint identification. During her testimony, Guajardo's wife identified a photo of the victim from the medical examiner's office as Guajardo. Dr. Dwayne Wolf from the Harris County Medical Examiner's Office testified that the autopsy report indicated the victim suffered multiple lacerations on his scalp as well as a deep wound on the neck caused by a sharp object. He stated that the victim's neck was cut to the vertebral column, resulting in rapid death. In addition, Dr. Wolf testified that the autopsy report showed the victim had bruises on his back consistent with a round, flat object. This testimony provides sufficient evidence to establish the corpus delicti of murder. *See Emery v. State*, 881 S.W.2d 702, 705 (Tex.Crim.App.1994) (finding the State offered independent evidence of corpus delicti of murder by proving identity of

body and that cause of death was stabbing); *Hammond v. State*, 942 S.W.2d 703, 707 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding corpus delicti of murder met when medical examiner proved identity of body and that cause of death was fatal bullet wounds). Accordingly, we overrule appellant's second issue.

**B. Is the evidence legally sufficient to support appellant's murder conviction?**

█ In his first issue, appellant contends the evidence is legally insufficient to support his murder conviction because (1) the State presented no physical evidence linking appellant to the crime; (2) the testimony by Moreno and Dominguez regarding appellant's confession is factually inconsistent with other testimony; (3) appellant and his wife cooperated with authorities; and (4) evidence exists to suggest someone else committed the crime.

█ In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim. App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing

party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997). The question is not whether a rational jury could have entertained a reasonable doubt of guilt, but whether it necessarily would have done so. *Swearingen v. State*, 101 S.W.3d 89, 96 (Tex.Crim.App.2003).

Under section 19.02 of the Texas Penal Code, as it applies in this case, a person commits the offense of murder when he either (1) intentionally or knowingly causes the death of another; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. *See* Tex. Pen.Code Ann. § 19.02(b)(1)-(2). Appellant contends the evidence is legally insufficient to support his conviction because the State failed to produce physical evidence linking him to the crime. Appellant claims the confessions about which Moreno and Dominguez testified are the only evidence connecting him to Guajardo's murder. Moreno and Dominguez testified to separate conversations with appellant while at the Beaumont federal prison in 1999 and 2000 respectively. In these conversations, each stated that appellant recounted the events leading up to Guajardo's murder. They testified that appellant said Guajardo owed him money for drugs and was not willing to pay. According to their testimony, appellant saw Guajardo at a night club and convinced him to leave with him. The two men, and an unnamed third person, got in a van. Appellant and Guajardo allegedly argued about the money, and appellant began choking Guajardo. According to their testimony, appellant then pulled a knife and slit Guajardo's throat. Appellant told Moreno and Dom-

inguez that when he saw Guajardo was still alive, he got a hammer and hit him until he killed him, and then disposed of the body by rolling it up in a carpet.

An extrajudicial confession is sufficient to establish the perpetrator's identity. *See Emery*, 881 S.W.2d at 706 (holding three extrajudicial confessions sufficient to support finding that appellant committed the offense despite lack of scientific evidence). The jury heard accounts of appellant's confession from both Moreno and Dominguez. Details within the accounts, beyond those which Moreno admitted to hearing about prior to the confession,[3] were consistent with evidence from other sources. Both Moreno and Dominguez testified that appellant said he hit Guajardo with a hammer. The medical evidence showed that some of Guajardo's injuries were consistent with a round, flat object similar to the head of a hammer. In addition, Moreno and Dominguez stated that appellant told them Guajardo was sitting in the front seat when appellant slit his throat from behind. Detective Brown testified that, while examining the body at the scene of its discovery, he noted blood did not appear to go beyond Guajardo's waistline, indicating he was probably cut while in a seated position. After reviewing the evidence, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Appellant argues that the testimony of Moreno and Dominguez regarding appellant's confession is factually inconsistent with other testimony, thereby rendering the evidence insufficient for conviction. Specifically, appellant contends the following facts are inconsistent with testimony from Moreno and Dominguez: (1) appellant told them he met Guajardo at a night club, yet Guajardo's wife testified that he was not dressed for a night club when he left the house that morning; (2) appellant said he placed Guajardo's dead body by a dumpster, yet other testimony indicated the body was not found by a dumpster but in an area commonly used for dumping; and (3) appellant indicated he beat Guajardo in the head with a hammer because Guajardo was still alive after appellant cut his throat, yet the medical examiner testified that Guajardo would have lived for a maximum of one minute and would not have made "significant, purposeful movement" under those circumstances. Appellant also raises the following additional inconsistencies in Moreno's testimony: (1) appellant stated he first choked Guajardo, yet the medical evidence does not indicate strangulation, and (2) appellant said Guajardo's friend drove Guajardo's vehicle home from the night club, yet Guajardo's wife recalls having the keys to the vehicle that day.

To the extent the testimony is inconsistent, the jury as the trier of fact had the ultimate authority to determine the credibility of witnesses and the weight to be given to their testimony. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Garcia v. State*, 919 S.W.2d 370, 382 n. 6 (Tex.Crim.App.1996) (per curiam). Any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal-sufficiency review. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Therefore, we conclude the inconsistencies cited by appellant do not render the evidence legally insufficient.

Finally, appellant asserts that the evidence is not legally sufficient to support

---

**3.** When questioned about details he had heard prior to the conversation with appellant, Moreno testified that he was aware that Guajardo's body was rolled in a carpet and that his throat was slit.

his conviction because he and his wife co-operated with authorities, whereas Hernandez refused to speak to the police and some facts point to Hernandez as the perpetrator. Appellant's argument appears to contest the fact that the jury rejected an alternative hypothesis, namely that Hernandez, not appellant, committed the offense. Appellant bases this contention on several grounds in addition to Hernandez's refusal to speak with authorities: (1) the fact that Guajardo never expressed fear of appellant; (2) Guajardo was last seen alive in Hernandez's company; and (3) Hernandez often worked for his father laying carpet. The State's failure to disprove a reasonable alternative hypothesis does not render the evidence legally insufficient. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App.1999). Therefore, appellant's contention in this regard lacks merit.

Having reviewed all of appellant's contentions, we conclude the evidence is legally sufficient to sustain appellant's murder conviction. Accordingly, we overrule appellant's first issue.

## C. Is the evidence factually sufficient to support appellant's murder conviction?

In his third issue, appellant challenges the factual sufficiency of the evidence to support the jury's verdict. When evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex. Crim.App.2000). This concept embraces both "formulations utilized in civil jurisprudence, i.e., that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great

weight and preponderance of the available evidence." *Id.* at 11. Under this second formulation, the court essentially compares the evidence which tends to prove the existence of a fact with the evidence that tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). In conducting the factual-sufficiency review, we must employ appropriate deference so that we do not substitute our judgment for that of the fact finder. *Id.* at 648.

When reviewing a factual-sufficiency challenge, we must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim.App.2003). Here, appellant cites the same reasons for factual insufficiency as discussed under legal sufficiency, namely (1) inconsistencies in the testimony of Moreno and Dominguez when compared to that of other witnesses and to the medical evidence; (2) the lack of physical evidence linking appellant to the crime; (3) the fact that he and his wife cooperated with authorities; and (4) the existence of facts pointing to Hernandez as the perpetrator of the crime. As additional support for his factual-sufficiency claim, appellant characterizes Moreno as a "professional witness" because he testified previously for the same prosecutor.

The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the evidence. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim.App.1997). Therefore, the jury may believe or disbelieve all or part of any witness's testimony. *See Jones v. State*, 984 S.W.2d 254, 258 (Tex.Crim.App.1998). A factual-sufficiency challenge will not necessarily be sustained simply because the record contains conflicting evidence upon which the fact finder could have reached a different conclusion. *See Santellan v.*

*State*, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). A reviewing court may disagree with the fact finder's resolution of conflicting evidence only when it is necessary to prevent manifest injustice. *See id.* at 164–65. A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *See Cain*, 958 S.W.2d at 410.

In this case, the jury apparently chose to believe that appellant told Moreno and Dominguez he killed Guajardo and that he recounted the details of the crime, despite any arguable inconsistencies in the testimony and appellant's contention that the State lacked physical evidence. *See Torres v. State*, 92 S.W.3d 911, 916–17 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (overruling appellant's factual-sufficiency challenge to murder conviction despite lack of physical evidence when jury chose to believe statements made by appellant to others). The jury evidently did so despite hearing testimony that appellant cooperated with authorities during the initial investigation and after learning that Moreno had testified for the prosecution in a prior case. After reviewing the evidence without "the prism of in the light most favorable to the prosecution," we cannot conclude that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

■ Appellant's claim that some facts point to Hernandez, rather than appellant, as the perpetrator of the crime does not mean the evidence is factually insufficient. The existence of alternative reasonable hypotheses may be relevant to, but is not determinative in, a factual-sufficiency review. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App.1999). The facts upon which appellant bases the hypothesis that Hernandez committed the crime are tenuous at best. Although appellant points to the fact that Guajardo was last seen alive

with Hernandez, Detective Brown testified that Guajardo's wife gave him descriptions of two men, Hernandez and "Millie," whom she identified in court as appellant. As additional support for his claim, appellant states that Hernandez often worked for his father laying carpet; however, this statement is not accurate. The testimony on which appellant relies indicates only that Hernandez's father installed carpet in Guajardo's home, with no mention of Hernandez assisting him. The only other evidence that appellant offers to show Hernandez may have committed the crime is that Guajardo never expressed any fear of appellant and that appellant cooperated with authorities whereas Hernandez did not. These statements are not enough for this court to conclude that the evidence is factually insufficient to support the appellant's conviction. By contrast, the jury heard testimony from two witnesses to whom appellant recounted the details of Guajardo's murder and admitted to killing him. *See Wilson*, 7 S.W.3d at 141–42. Accordingly, we overrule appellant's third issue.

**D. Was appellant entitled to a mistrial because a witness improperly testified that he was promised protection from appellant's death threat in exchange for his testimony?**

■ In his fourth issue, appellant argues that the trial court abused its discretion when it denied him a mistrial following Dominguez's statement before the jury that he was promised protection from appellant's death threat in exchange for his testimony.

■ We review a trial court's denial of a motion for mistrial under an abuse-of-discretion standard. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App.1999). Mistrials are an extreme remedy for curing prejudice occurring during trial. *Bau-*

der v. State, 921 S.W.2d 696, 698 (Tex. Crim.App.1996). They ought to be exceedingly uncommon and employed only when less drastic remedies are inadequate to the task of removing residual prejudice. *Id.* A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *Hinojosa v. State,* 4 S.W.3d 240, 253 (Tex.Crim.App.1999).

On direct examination, Dominguez stated that he was promised protection against appellant's death threat in exchange for his testimony in the case. Defense counsel immediately requested the attorneys approach the bench and the trial court excused the jury. Outside the jury's presence, the prosecutor stated that she did not anticipate the answer, but that the witness was telling the truth. Defense counsel objected that the statement violated the motion in limine. Just prior to Dominguez taking the witness stand, the parties had agreed not to broach the subject of appellant's alleged death threats without first approaching the bench. The trial court agreed to instruct the jury and offered defense counsel the option of writing out the instruction. With the jury still removed, defense counsel questioned the witness further about his knowledge of a death threat and the promise he received from the prosecution. After additional discussion between the trial court and counsel, the court called the jury in and instructed them to disregard the last response by the witness. The trial court then inquired whether defense counsel wished any additional instruction. Defense counsel moved for a mistrial, and the trial court denied the motion.

Appellant contends Dominguez's response improperly injected an extraneous offense in violation of the motion in limine and was calculated to inflame the jury. A prompt instruction to disregard will ordinarily cure error associated with an improper question and answer regarding extraneous offenses. *See Ovalle v. State,* 13 S.W.3d 774, 783 (Tex.Crim.App. 2000). Because curative instructions are presumed effective to withdraw from jury consideration almost any evidence or argument that is objectionable, trial conditions must be extreme before a mistrial is warranted. *Bauder,* 921 S.W.2d at 700. This presumption may apply even where the instruction follows violation of an order in limine. *Janney v. State,* 938 S.W.2d 770, 773 (Tex.App.-Houston [14th Dist.] 1997, no pet.).

The improper statement was not of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *See Martinez v. State,* 844 S.W.2d 279, 284 (Tex.App.-San Antonio 1992, pet. ref'd) (holding instruction cured error when police officer testified that appellant had threatened intended victim); *see also Whitaker v. State,* 977 S.W.2d 595, 600 (Tex.Crim.App.1998) (finding instruction cured error when witness testified that appellant was physically and mentally abusive towards her); *Paster v. State,* 701 S.W.2d 843, 848 (Tex.Crim. App.1985) (concluding instruction rendered testimony about appellant's alleged involvement in two extraneous murders harmless). Nor were trial conditions so extreme as to warrant a mistrial. Before this testimony, the jury heard similar testimony from Moreno concerning his fear that appellant would have him stabbed if he knew Moreno cooperated with the State in any investigation.[4] Like Domin-

---

**4.** In explaining why he showed appellant a fake pre-sentence investigation (P.S.I.), More-

no stated:
  Q: Why did you do that?

guez, Moreno also confirmed that the prosecution offered him protective custody, stating, without objection, that "I told you that the reason I'm calling you is because I need your help, because I was going to get killed regardless. So, I mean, it's my only self-defense I got against this man." Therefore, we conclude the trial court did not abuse its discretion when it denied the motion for mistrial. Accordingly, we overrule appellant's fourth issue.

## IV. CONCLUSION

The evidence suffices to prove the corpus delicti of murder. Likewise, the evidence is legally and factually sufficient to sustain appellant's murder conviction. Lastly, the trial court did not abuse its discretion when it denied appellant's motion for mistrial following Dominguez's statement concerning appellant's death threat. Having overruled all of appellant's issues, we affirm the trial court's judgment.

A: Why did I show him that P.S.I.? Because when they find that you're hot—we call it hot—they make you check in or you get hit, so I didn't want to get—

. . .

Q: Why did you worry about being hot to this man?

A: Because he would have had me hit or checked in.

Q: What does that mean, he, this defendant, would have had you hit?

A: Stabbed.