Opinion issued April 17, 2008 
 





    







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00288-CR
____________

MELANIE JEAN SIMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 1372949



 
MEMORANDUM OPINION
          A jury convicted appellant, Melanie Simpson, of the Class A misdemeanor
offense of criminal mischief, and the trial court assessed punishment at one year in
jail, suspended for one year of community supervision. See Tex. Pen. Code Ann. §
28.03(a)(1), (b)(3)(A)(i) (Vernon Supp. 2007). We determine whether the evidence
was legally and factually sufficient to support the conviction, specifically, to show
that appellant was the actor. We affirm.
Background
          On the morning of April 27, 2006, Gail “Bubba” Melton IV parked his truck
in the Klein High School parking lot. That same morning, his truck was “keyed,”
resulting in about $750 in damages. That same morning, appellant and her best
friend, Meagan Bowman, had decided to skip class. They were leaving the campus
and entering the school parking lot at the same time that Melton’s friend, Reid
Phillips, was exiting the parking lot to go to class. 
          At trial, it was undisputed that Phillips passed the girls in the parking lot near
Melton’s truck, but everything else about that meeting was disputed. For example,
Phillips contended that he saw appellant holding a key against the side of Melton’s
truck, while Bowman stood beside her; that he, appellant, and Bowman exchanged
words; that at that time, there were only some key marks on the truck; and that after
he had reported the incident to appellant’s principal, Martin Denmark, Phillips
returned to find more key marks on the truck. In contrast, appellant’s evidence
showed that all of the key marks were already on the truck when she and Bowman
first approached it; that they had stopped by Melton’s truck merely to observe it; that
neither of them keyed the truck; that appellant did not even have a key in her
possession that day; and the three never exchanged words when Phillips passed them
in the parking lot.
          After Phillips had left the parking lot, he called Melton to advise him of the
keying. Melton and Phillips then went to report the incident to Principal Denmark. 
The principal called for a police officer, and the call was answered by Officer Troy
Galloway and a female officer. Appellant and Bowman, who were still skipping
school, were eventually tracked down, at which point they reported to the principal’s
office and appellant was arrested.
Sufficiency of the Evidence
          As charged in the information, a person commits criminal mischief “if, without
the effective consent of the owner: . . . he intentionally or knowingly damages or
destroys the tangible property of the owner . . . .” Tex. Pen. Code Ann.
§ 28.03(a)(1). The offense is a Class A misdemeanor if the amount of pecuniary loss
is $500 or more but less than $1,500. See id. § 28.03(b)(3)(A)(i). Appellant
challenges the legal and factual sufficiency of the evidence showing that she was the
actor who damaged Melton’s vehicle by keying it.
A.      Standard of Review
          In reviewing a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000). When conducting a factual-sufficiency review, we view
all of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997). We will set aside the verdict only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11. Under the
first prong of Johnson, we cannot conclude that a conviction is “clearly wrong” or
“manifestly unjust” simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006). Under the second prong of Johnson, we cannot declare that
a conflict in the evidence justifies a new trial simply because we disagree with the
jury’s resolution of that conflict. Id. Before concluding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury’s verdict. Id. 
          Appellant raises both types of factual-sufficiency challenges in this case. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). In either type of sufficiency review, we
may not re-weigh the evidence and substitute our judgment for that of the fact-finder. 
King, 29 S.W.3d at 562. The fact-finder alone determines what weight to place on
contradictory testimonial evidence because that determination depends on the
fact-finder’s evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408–09. 
As the determiner of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented. Id. at 407 n.5.
B.      Legal Sufficiency
          The following evidence, viewed in the light most favorable to the verdict,
supports the jury’s implicit conclusion that appellant keyed Melton’s vehicle. Phillips
knew who appellant was because he had seen her around school, although he did not
know her personally and was not part of her group of friends. He testified that, as he
was walking through the parking lot to his second-period class about 8:20 on the
morning of the offense, he observed appellant and Bowman “standing by [his]
friend’s truck with a key on the truck.” Appellant and Bowman were on the driver’s
side of the truck. Phillips testified repeatedly that appellant was the one who was
holding the key “on,” “against,” “up against,” or “to” the truck or its side;


 he even
testified that he believed that she was holding the key in her right hand, although he
could not be certain. Meagan, in contrast, was standing behind appellant, “on the
other side of [appellant].” Phillips explained that, as he approached, “[t]hey,
obviously, did recognize me and they pulled it away.”
          Phillips walked up to appellant and Bowman and asked them what they were
doing. Appellant and Bowman responded that they “just wanted to stand by their
truck,” although he knew that that was his friend’s truck, not theirs. They also told
Phillips that there “was nothing to see” and instructed him to “keep walking.”


 At
that point, Phillips could see some scratches on the truck’s driver’s side, on the back
panel, but the full amount of writing and scratches had not yet been made. When
Phillips returned to the truck after he and Melton had seen the principal and the police
had been called, “[t]here were more markings on the side panel and also on the
tailgate.”
          When appellant and Phillips went to Principal Denmark, Phillips reported that
he had seen appellant’s “hand with the key on the truck.” Principal Denmark testified
that Phillips and Melton “were upset because [Melton’s] vehicle had been keyed” and
that they “seemed to be sure of what had transpired,” which is why the principal
involved a police officer immediately. After appellant was arrested, she either
emptied her pockets onto the principal’s desk or the officers emptied them for her. 
Although there is conflicting testimony as to whether appellant had a key in her
pocket when she arrived in the principal’s office, Principal Denmark—whose
testimony on this point is in the light most favorable to the verdict—testified that he
“believe[d] that there was a house key” among appellant’s pocket contents. In any
event, it was undisputed that Bowman, who was with appellant on the relevant
morning, had a key in her purse, even though she denied that appellant had keyed the
car or that her key had been used to do so.
          We hold that on the basis of this evidence a rational jury could have found
beyond a reasonable doubt that appellant was the actor who keyed Melton’s vehicle. 
We thus further hold that the evidence was legally sufficient to support the verdict.
          We overrule issue one.
C.      Factual Sufficiency
          Appellant relies on the following evidence to support her contention that the
evidence is factually insufficient to show that she was the actor who keyed the
vehicle. “Several” or “a couple of” other cars in the school parking lot were
burglarized on the same day on which Melton’s truck was keyed, although the only
keying was to Melton’s truck, and keying “occasionally occurred” in the school
parking lot. Melton’s truck was parked very close to a crosswalk that was heavily
used by students from about 7:00 to 7:30 in the mornings before the first school
period, and his truck had been parked there for well over an hour before Phillips
observed appellant and Bowman beside it and the initial scratches on it.
          Appellant and her father testified that appellant never carried any keys with
her: she did not drive, and she did not need keys to get into her home because, having
a large dog to protect the home, the family left the back door unlocked. In addition,
Officer Galloway admitted that he did not find keys in appellant’s pockets when he
patted her down in the principal’s office.


 Principal Denmark also testified that his
best recollection was that Phillips had told him only that Phillips had seen appellant
near the truck, rather than having seen her key it. Phillips’s written statement
likewise did not phrase what he had seen as “keying the truck.”


 Although both
appellant and Bowman admitted that Phillips passed them in the parking lot that
morning, they both denied having keyed Melton’s truck, testified that the truck had
already been fully marked before Phillips passed them, and denied that they had had
a verbal exchange with Phillips.
          Officer Galloway admitted that he never “talked to or interviewed appellant”;
that he did not offer appellant the opportunity to “tell her side of the story” before
arresting her; that he did not interview appellant’s parents “about whether or not
[appellant] even carried keys”; and that he never tried to determine if fingerprints
could be lifted from the truck. Principal Denmark did not discipline appellant for the
keying because he did not have “adequate information” as to whether she had been
the perpetrator.



          Phillips “couldn’t really tell if” appellant’s hand holding the key “was actually
moving or not” on the truck’s side; he simply could not recall if there was movement
because he “really wasn’t paying that close attention to if there was movement,”
although he “looked at their faces to see exactly who it was.” Phillips never shouted
at or told the girls to stop keying his friend’s truck, and he instead walked away
without looking back, despite his not having been afraid of the girls.



          Melton testified that appellant was not in his group of friends, that he and she
got along at school, and that she would have had no reason to key his car. Bowman
denied that she or appellant had a reason to key Melton’s truck; appellant testified
likewise. Defense counsel presented three character witnesses, all of whom testified
that appellant had a general reputation for truthfulness. Appellant’s father also
testified that appellant “appreciat[ed] automobiles.”
 
          Viewing the evidence in a neutral light, we cannot say that the evidence was
factually insufficient. We reach this conclusion because, at its heart, this was a case
about credibility. The story that Phillips gave—that he saw appellant holding a key
against the truck, that he had a verbal exchange with the girls, and that the truck had
not fully been scratched when he passed them—cannot coexist with the story that
appellant presented—that she never held, had, or used any key; that no verbal
exchange occurred between the girls and Phillips when he passed them; and that the
truck had already been fully marked by the time that Phillips passed. Indeed, this is
one of the ways in which appellant’s trial counsel characterized the case in his closing
argument, after he described the State’s case as “kind of hing[ing] on Reid Phillips’s
story”: that Phillips’s and appellant’s stories could not both be true; that the jury
should believe appellant’s story because it was credible and others with good
reputations had vouched for her truthfulness; and that the jury should reject Phillips’s
story because his story “makes no sense,” his actions upon seeing the crime were
“[q]uite strange,” and he was “making up a story” that was “just not true.”
          Resolving this credibility question was the jury’s province, especially when
eyewitness Phillips testified consistently that he saw appellant with a key against the
side of Melton’s truck. Phillips’s written statement likewise mentioned both that he
had seen appellant“with a key on the side of the truck,” even if he did not describe it
as “keying,” and that appellant and Bowman had told him that “there’s nothing to see
here” and instructed him “to keep walking.” “A factual-sufficiency challenge will not
necessarily be sustained simply because the record contains conflicting evidence upon
which the fact finder could have reached a different conclusion.” Herrero v. State,
124 S.W.3d 827, 834 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Rather, “[a]
reviewing court may disagree with the fact finder’s resolution of conflicting evidence
only when it is necessary to prevent manifest injustice.” Id. at 835. “A jury decision
is not manifestly unjust merely because the jury resolved conflicting views of
evidence in favor of the State.” Id. We see no manifest injustice on this record that
would preclude the jury’s resolution of credibility issues against appellant.
          We hold that the evidence supporting the verdict is not so weak as to render the
verdict clearly wrong and manifestly unjust. We further hold that the contrary
evidence on which appellant relies does not render the verdict against the great
weight and preponderance of the evidence. We thus hold that the evidence is not
factually insufficient to support the verdict.



          We overrule issue two.
Conclusion
          We affirm the judgment of the trial court.
 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. See Tex. R. App. P. 44.2(b).