ACCEPTED
07-14-00360-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
7/9/2015 8:48:23 PM
Vivian Long, Clerk

NO. 07-14-00360-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

7/9/2015 8:48:23 PM

VIVIAN LONG
CLERK

_____

SHELLY BLAIR
V.
THE STATE OF TEXAS

_____

ON APPEAL FROM THE 364TH DISTRICT COURT
OF LUBBOCK COUNTY, TEXAS
CAUSE NO. 2014-401,146

_____

BRIEF FOR THE STATE

_____

MATTHEW D. POWELL
Criminal District Attorney
Lubbock County, Texas

K. SUNSHINE STANEK
AMANDA MCKINNEY SAY
CHRISTOPHER SCHULTE
Assistant Criminal District Attorneys

ORAL ARGUMENT WAIVED

LAUREN MURPHREE
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24085059
P.O. Box 10536, Lubbock, TX 79408
Phone (806)775-1100
FAX: (806)775-7930
E-mail: LMurphree@lubbockcda.com
(On Appeal)
**ATTORNEY FOR THE STATE**

## Identity of Parties and Counsel

**Appellant:**

Shelly Blair

**Appellant's trial attorneys**:

Mike Brown, 1601 Broadway, Lubbock, TX 79401; phone (806)763-9493; fax (806)744-5411.

Audie Reese, 1616 Texas Avenue, Suite 4, Lubbock, TX 79401; (806)747-5676.

**Appellant's appellate counsel:**

Jesse Mendez, 2833 74th St., Lubbock, TX 79423; phone (806)748-5287; fax (806)748-5256.

**State of Texas:**

At trial:

K. Sunshine Stanek, Amanda Say, Christopher Schulte, Assistant Criminal District Attorneys, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, Texas 79408; phone (806) 775-1100; fax (806)775-7930

On appeal:

Lauren Murphree, Assistant Criminal District Attorney, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, Texas 79408; phone (806) 775-1100; fax (806)775-7930

**Trial Judge:**

Honorable Cecil Puryear, Presiding Judge, sitting by assignment, 364th District Court of Lubbock County, Texas, Lubbock County Courthouse, 904 Broadway, Lubbock, TX 79401

# Table of Contents

**PAGE**

Identity of Parties and Counsel...........................................................................................i

Table of Contents..............................................................................................................ii

Table of Authorities.........................................................................................................iv

Statement of the Case.......................................................................................................1

Statement of the Facts.......................................................................................................1

Summary of the Argument ...............................................................................................5

Argument and Authorities................................................................................................7

*First Issue Presented*: Appellant argues that the evidence was insufficient for the jury to find beyond a reasonable doubt that she intentionally, knowingly, or recklessly caused bodily injury to Officer Matsik. Where the jury heard testimony that Appellant accelerated just before hitting Officer Matsik, and that after the offense Appellant told people that she "did it" because she did not want to get caught, and that she killed a cop, is the evidence sufficient to show that—at the very least—Appellant knew of the risk of her conduct and consciously disregarded that risk when she struck Officer

Matsik? ……………………………………………………………………………...7

*Standard of Review* ………………………………………………………………………7

I. APPELLANT CANNOT PROVE THAT THE VERDICT IS SO CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AS TO BE CLEARLY WRONG AND UNJUST …………………………………………………………………....8

    A. Appellant's statements after the offense support a finding of knowing or intentional conduct .................................................................................................10

B. Appellant's reckless driving at a high rate of speed, illegal passing, failure to maintain a single lane, and failure to stop and render aid when she struck Officer Matsik support—at the very least—a finding of recklessness................13

*Conclusion* ................................................................................................15

Conclusion and Prayer ................................................................................15

Certificate of Service ..................................................................................16

Certificate of Compliance ..........................................................................16

# Table of Authorities

**SUPREME COURT CASE LAW**         **PAGE**

*Jackson v. Virginia*,

   443 U.S. 307, 99 S.Ct. 2781 , 61 L.Ed.2d 560 (1979) ........................................7


**TEXAS CASE LAW**

*Brooks v. State*,

   323 S.W.3d 893 (Tex. Crim. App. 2010) ..........................................................7

*Brown v. State*,

   91 S.W.3d 353 (Tex. App.—Eastland 2002, no pet.) .......................................10

*Dewberry v. State*,

   4 S.W.3d 735 (Tex. Crim. App. 1999).............................................................8

*Dobbins v. State*,

   228 S.W.3d 761(Tex. App.—Houston [14th Dist.] 2007, pet. dism'd.........................11

*Hart v. State*,

   89 S.W.3d 61 (Tex. Crim. App. 2002).............................................................9

*Hartsfield v. State*,

   305 S.W.3d 859(Tex. App. Texarkana 2010), reh'g overruled (Mar. 9, 2010) ....... 9, 10

*Henderson v. State*,

   825 S.W.2d 746(Tex. App.—Houston [14th Dist.] 1992, pet. ref'd............................11

Herrero v. State,

   124 S.W.3d 827 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ...............9, 10, 11

*Lucio v. State*,

   351 S.W.3d 878 (Tex. Crim. App. 2011) ..........................................................7

*Rodriguez v. State,*

    129 S.W.3d 551 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd)...............................11

*Smith v. State,*

    965 S.W.2d 509 (Tex. Crim. App. 1998) ..........................................................................9

*Williams v. State,*

    235 S.W.3d 742 (Tex. Crim. App. 2007) ........................................................................13

## TEXAS RULES AND STATUTES

TEX. PENAL CODE § 6.03(a) ...............................................................................................10

TEX. PENAL CODE § 6.03(b)...............................................................................................10

TEX. PENAL CODE § 6.03(c) ...............................................................................................13

TEX. PENAL CODE § 22.02(a)(2), (b)(2)(B)........................................................................9

TEX. R. APP. P. 3.2...............................................................................................................vi

TEX. R. APP. P. 9.4(i)(1) .....................................................................................................16

TEX. R. APP. P. 9.4(i)(3) .....................................................................................................16

v

NO. 07-14-00360-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

_____

SHELLY BLAIR
V.
THE STATE OF TEXAS

_____

BRIEF FOR THE STATE

_____


**To the Honorable Court of Appeals**:

The State of Texas, the prosecuting authority in Cause No. 2014-401,146 in the 364th District Court of Lubbock County, and Appellee before the Seventh Court of Appeals, respectfully submits this brief in reply to the brief filed by Appellant appealing his conviction for the offense of Aggravated Assault on a Public Servant. The parties will be referred to as "Appellant" and "State."[1]

_____

[1] TEX. R. APP. P. 3.2.

## Statement of the Case

Appellant was indicted for the offense of Aggravated Assault on a Public Servant on January 22, 2014. (Clerk's Record (CR) p. 8). Following a four-day trial, from September 29, 2014 to October 2, 2014, Appellant was found guilty of the offense as indicted. (CR p. 87). The trial court assessed punishment at fifty years imprisonment and certified that Appellant has the right of appeal. (CR pp. 79, 97).

## Statement of the Facts

Narcotics officers with the Lubbock Police Department were conducting surveillance on a warehouse on January 10, 2014, when they observed a gray vehicle driven by a white male and a white female passenger approach the warehouse.[2] After pulling up next to the officer's vehicle and attempting to look inside, the individuals in the gray vehicle knocked on the warehouse door and went inside.[3] Noting the officers outside, the driver of the vehicle told his counterpart inside the warehouse—William Trae Groessbeck—that he was going to leave and wasn't going to stop.[4] Eventually, the male and female returned to the gray vehicle and left the parking lot.[5] This

---

[2] (RR vol. 4, pp. 31-32).
[3] (RR vol. 4, pp. 32-33).
[4] (RR vol. 5, pp. 186-87).
[5] (RR vol. 4 p. 38).

information was relayed by surveilling officers to Officer Matsik, who began to follow the gray vehicle.[6]

Once behind the vehicle, Officer Matsik activated his emergency lights to perform a traffic stop.[7] The gray vehicle began to pick up speed, and a high-speed chase ensued in central Lubbock.[8] At approximately 52nd Street and Slide Road, the high speed chase ended when the driver of the gray vehicle crashed his vehicle into Officer Matsik's, and the driver fled on foot.[9] Officer Matsik followed.[10] The driver, who was running very quickly—even breaking through a fence at one point during the pursuit—ran through backyards and wove through alleys as he attempted to evade Officer Matsik.[11] The female passenger remained with the vehicle and drove away.[12]

As the male suspect turned onto Utica Avenue from the east via an alley, Officer Matsik observed a mail truck driving north down Utica swerve to miss him.[13]

---

[6] (RR vol. 4, pp. 38-40).
[7] (RR vol. 5, p. 58).
[8] (RR vol. 5, pp. 58-62).
[9] (RR vol. 5, pp. 62, 79).
[10] (RR vol. 5, p. 62).
[11] (RR vol. 4, pp. 50-51).
[12] (RR vol. 4, p. 56).
[13] The exhibit, admitted at trial, is useful in visualizing the scene as it was described at trial.



The driver of the mail truck, Gary Davis, drove very slowly as he saw the gray

vehicle approaching at a high rate of speed from behind.[15] At the same time, Officer

Matsik emerged from the alley and once again saw the gray vehicle—this time coming

directly towards him.[16] To Davis's surprise, the gray vehicle passed the mail truck on

---

[14] (State's Ex. 80).

[15] (RR vol. 4, 81).

[16] (RR vol. 4, p. 92).

the right.[17] After accelerating, the gray vehicle hit Officer Matsik—who attempted to minimize the impact by pushing off of the vehicle.[18] After throwing Officer Matsik over the hood of the mail truck and onto the ground, the vehicle sped away.[19] Accident reconstruction officers later found no signs of braking prior to impact.[20] Davis rendered aid to Officer Matsik until EMS arrived, likely saving his life.[21]

As law enforcement and medical assistance arrived, officers began to search for both the suspect who had fled on foot and the driver of the gray vehicle.[22] Civilians in the area were instrumental in pointing law enforcement toward both of the fleeing suspects.[23] The male suspect (later identified as William Hill) was found hiding inside of an elderly woman's apartment.[24] A separate search and witnesses led officers to Natasha Sperling, who implicated Appellant as the driver of the vehicle when it hit Officer Matsik. According to Sperling, Appellant fled to a nearby house where Sperling was staying and told Sperling she "fucked off a cop" who was undercover.[25] Sperling helped Appellant change clothes let Appellant use her phone to contact Hill and Groesbeck, who Appellant told she might get out of town.[26]

---

[17] (RR vol. 4, p. 81).
[18] (RR vol. 5, p. 65).
[19] (RR vol. 4, p. 83).
[20] (RR vol. 5, p. 260).
[21] (RR vol. 4, pp. 84-85).
[22] (RR vol. 5, pp. 110-11).
[23] (*See, e.g.*, RR vol. 5, pp. 114-15).
[24] (RR vol. 5, pp. 116-17).
[25] (RR vol. 5, p. 168).
[26] (RR vol. 5, p. 171).

Appellant ultimately gave Sperling more details: including that after Hill got out and ran, she wanted to get away and ran over the "cop" because Hill was about to get caught.[27] Appellant was eventually apprehended at Sperling's house wearing different clothes than those described by Officer Matsik, and identified herself as "Sherry" to officers upon arrest.

## Summary of the Argument

The evidence presented at trial proved that Appellant intentionally hit Officer Matsik with her vehicle to avoid her or her co-defendant, William Hill, from getting caught. Before Hill even began to evade officers, he told his friends that he was going to leave and not stop. As predicted, a high-speed chase ensued once Officer Matsik began following the vehicle that resulted in Hill hitting Officer Matsik's vehicle and fleeing on foot. Officer Matsik followed, and Appellant took control of Hill's vehicle and drove in the direction of the individuals. When Appellant turned onto Utica Avenue one can imagine she saw three things: a mail truck driving down the street, Hill turning onto a street from an alley, and Officer Matsik close behind gaining ground on Hill. At that time, Officer Matsik saw only one thing: Appellant driving directly toward him. Crash.

The crime scene alone supports a finding of intentional conduct by Appellant. But at the very least, Appellant's actions support recklessness. Appellant had been in

---

[27] (RR vol. 5, p. 68).

the vehicle when it struck Officer Matsik's vehicle and the mail truck, yet consciously disregarded that risk when she continued to drive in a reckless manner down a residential street.

Appellant's actions after the offense are also enlightening: telling her friend that she "fucked off a cop," saying that Hill was about to get caught and that she did not want to get caught, and fleeing from the scene all point to a culpable mental state. Deference to the fact finder's deicions coupled with this Court's ability to look to circumstances before, during, and after the offense all lead to the conclusion that the evidence was sufficient to support a culpable mental state of intentional, knowing, or reckless behavior at trial.

## Arguments and Authorities

## First Issue Presented

Appellant argues that the evidence was insufficient for the jury to find beyond a reasonable doubt that she intentionally, knowingly, or recklessly caused bodily injury to Officer Matsik. Where the jury heard testimony that Appellant accelerated just before hitting Officer Matsik, and that after the offense Appellant told people that she "did it" because she did not want to get caught, and that she killed a cop, is the evidence sufficient to show that—at the very least—Appellant knew of the risk of her conduct and consciously disregarded that risk when she struck Officer Matsik?

## Standard of Review

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*.[28] In reviewing a challenge to the legal sufficiency of the evidence, the evidence must be examined in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences from it, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[29] The standard gives "full play to the responsibility of the trier of fact fairly to

---

[28] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see Brooks v. State*, 323 S.W.3d 893, 912, 925 (Tex. Crim. App. 2010) (plur. op.).

[29] *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Brooks*, 323 S.W.3d at 902 n. 19.

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[30] Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.[31] In a sufficiency review, all of the evidence in the record must be reviewed, "both direct and circumstantial, whether admissible or inadmissible."[32]

## I. APPELLANT CANNOT PROVE THAT THE VERDICT IS SO CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AS TO BE CLEARLY WRONG AND UNJUST

Appellant was convicted of aggravated assault of a public servant. At trial, the State was required to prove beyond a reasonable doubt that: 1) Shelly Blair; 2) on or about the 10th day of January, 2014; 3) did then and there intentionally, knowingly, or recklessly; 4) cause bodily injury; 5) to Michael Matsik; 6) by striking him with a motor vehicle; 7) and the defendant did then and there use or exhibit a deadly weapon, to wit: a motor vehicle, during the commission of said assault; 8) and the defendant did then and there know that Michael Matsik was then and there a public sevant, to wit: a police officer; and 9) that Michael Matsik was then and there lawfully discharging an

---

[30] *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *accord Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).
[31] *Lucio*, 351 S.W.3d at 894.
[32] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

official duty, to wit; pursuing a fleeing suspect while on foot.[33] The offense of aggravated assault against a public servant—as indicted—requires that a person intentionally or knowingly threaten another with imminent bodily injury, and "use, or exhibit, a deadly weapon during the commission of the assault" against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty.[34]

Appellant attacks only the sufficiency of the evidence supporting the mens rea of the offense. A defendant's culpable mental state is a question of fact to be determined from the totality of the circumstances.[35] In reviewing the sufficiency of the evidence, the reviewing court should look at events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to commit the offense.[36] The jury may infer the existence of a culpable mental state from any facts tending to prove its existence—including the existence of a culpable mental state from any facts tending to prove its existence—for example, the acts, words, and conduct of the accused.[37] Each fact need not point directly and independently to the guilt of the appellant, so

---

[33] (CR p. 8).
[34] TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B).
[35] *See Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998).
[36] *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App. Texarkana 2010), reh'g overruled, (Mar. 9, 2010).
[37] *See Hart v. State*, 89 S.W.3d 61 (Tex. Crim. App. 2002).

long as the cumulative force is sufficient to support the conviction.[38] In a legal sufficiency analysis, the question is not whether a rational jury could have entertained a reasonable doubt of guilt, but whether it necessarily would have done so based on the evidence presented.[39]

## A. Appellant's statements after the offense support a finding of knowing or intentional conduct

Intentionally, as defined in the Court's Charge, means "a person acts intentionally, or with intent, when it is his conscious objective or desire to cause the result."[40] Knowingly, as defined in the court's charge, means "a person acts knowingly, or with knowledge, when he is aware that his conduct is reasonably certain to cause the result."[41] Both can be shown by a defendant's actions before, during, or after an offense.[42]

In *Brown v. State*, 91 S.W.3d 353, 356-58 (Tex. App.—Eastland 2002, no pet.), the appellant, while fleeing from a police officer, jumped in a utility truck with a boom and bucket holding a utility worker raised thirty feet in the air. He then drove off in a reckless manner and at a high rate of speed, crashed the vehicle, and the utility worker suffered serious bodily injury.[43] In that case, the court of appeals held that evidence

---

[38] *Hartsfield v. State*, 305 S.W.3d at 863.
[39] Herrero v. State, 124 S.W.3d 827 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).
[40] (CR p. 8); TEX. PENAL CODE § 6.03(a).
[41] (CR p. 8); TEX. PENAL CODE § 6.03(b).
[42] *Hartsfield*, at 863.
[43] *Id.*

was sufficient to support the verdict in part because the jury heard Appellant's statements after the accident asking how the utility worker was and how badly he was hurt.[44] When viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the appellant used the utility truck in a manner in which it would be capable of causing death or serious bodily injury because his statements after the fact showed an awareness of the risk to the utility worker.[45]

Similarly, flight after an offense can serve as indicia of guilt. In *Dobbins v. State*, 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, *pet. dism'd* Dec. 5, 2007), the appellant was convicted of aggravated assault on a public servant after running over a deputy constable in his vehicle. After hitting the deputy constable, the appellant fled.[46] There, no evidence was presented that the appellant sped up to hit the officer, but the appellant's flight after hitting the officer supports a culpable mental state (in that case, intentional or knowing conduct).[47]

Appellant's case presents both: communications after the fact that indicate a culpable mental state, and flight after the offense as indicia of guilt. The jury was

---

[44] *Id.* at 357.

[45] *Id.*

[46] *Id.* at 763.

[47] *See id.* at 763-65, (holding that after the vehicle stopped and the victim got off of the hood of the vehicle, the appellant fled the scene); *see also Rodriguez v. State*, 129 S.W.3d 551, 564 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant's attempt to flee cast doubt on his claim of ignorance of the offense); *Henderson v. State*, 825 S.W.2d 746, 749-50 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (holding that in determining intent, the jury was entitled to consider events occurring before, during, and after commission of the offense).

presented with the following facts that support finding a knowing or intentional mental state:

- Officer Matsik was readily identifiable as law enforcement, announced himself, and was wearing a LPD vest;
- Appellant knew that Hill and Officer Matsik were engaged in a foot chase on the streets she was driving down;
- Appellant illegally passed a stopped mail truck on a two-lane road on the right;
- Davis testified that the impact was not instantaneous with Appellant turning onto the street and Officer Matsik exiting the alley;
- Officer Matsik heard Appellant's vehicle accelerate toward him;
- Crime scene investigation revealed no signs of Appellant braking before impact;
- Appellant fled the scene after hitting Officer Matsik;
- Appellant told Sperling that Hill was about to get caught [by Officer Matsik] and that she did not want to get caught;
- Appellant changed clothes after the offense to conceal her identitity; and
- Appellant identified herself to police as "Sherry" when apprehended

Individually and together, the facts support the verdict. Appellant's statements to others after the offense do not point to an "accident" or mere "failure to stop and render aid" as she advocates for. Instead, her actions and conduct before, during, and after the offense indicate a conscious objective or desire to cause the result.

**B. Appellant's reckless driving at a high rate of speed, illegal passing, failure to maintain a single lane, and failure to stop and render aid when she struck Officer Matsik support—at the very least—a finding of recklessness**

Recklessly, as defined in the court's charge, means "a person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial or unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature or degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."[48] Distinguishing recklessness from criminal negligence is instructive:

> Criminal recklessness must not be confused with (or blended into) criminal negligence, a lesser culpable mental state. With criminal negligence, the defendant ought to have been aware of a substantial and unjustifiable risk that his conduct could result in the type of harm that did occur, and that his risk was of such a nature that the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people.[49]

While both require a gross failure to adhere to a reasonable-person standard of care, recklessness means that the actor was aware of the risk he was creating and consciously disregarded it.[50] In analyzing conduct for recklessness, courts consider

---

[48] (CR pp. 7-8); TEX. PENAL CODE § 6.03(c).
[49] *Williams v. State*, 235 S.W.3d 742, 750-51 (Tex. Crim. App. 2007).
[50] *Id.* at 751.

whether 1) the alleged act or omission—viewed objectively at the time of its commission—created a substantial and unjustifiable risk of the type of harm that occurred; and 2) the risk was of such a magnitude that disregarding it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation.[51] Even removing Hill and Officer Matsik from the scene, Appellant's manner of driving—maintaining a high speed in a residential area and passing a stopped vehicle on the right shoulder—at the time of the offense created a substantial and unjustifiable risk of the type of harm that occurred.

In addition to facts supporting a knowing or intentional state of mind, the jury also heard:

- Hill was going to get away at any cost, and Appellant was along for the ride;
- Appellant had just been involved with Hill in a motor vehicle accident following a high speed chase before Hill fled on foot;
- Prior to hitting Officer Matsik, Appellant struck the mail truck.

Each of the circumstances put before the jury demonstrate awareness of the risk (accidents that had already occurred as a result of reckless driving) and a conscious disregard of that risk. Perhaps most incriminating, however, is the fact that Appellant drove at a high speed in the direction of the foot chase. Had Appellant simply wanted to evade arrest herself and get away, she could have easily driven away from the direction of the foot chase and avoided the situation entirely. Instead,

---

[51] *Williams v. State*, 235 S.W.3d at 755.

Appellant drove directly toward both Hill and Officer Matsik. If her conduct was not intentional or knowing, then it was at the very least reckless because she wholly disregarded the extreme degree of risk driving recklessly at a high rate of speed in a residential area posed to those who lived there and those engaged in a foot chase on those very streets. Evidence was sufficient to support the jury's conduct.

## Conclusion

When viewing the evidence in the light most favorable to the verdict, a rational trier of fact reasonably could have found that the appellant intentionally, knowingly, or recklessly used her motor vehicle to cause bodily injury to Officer Matsik.

## Conclusion and Prayer

For the reasons stated above, no reversible error has been committed and the State respectfully requests that the Court should affirm the judgment and sentence in all things.

Respectfully submitted,

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782

By: /s/ Lauren Murphree
Lauren Murphree
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24085059
P.O. Box 10536
Lubbock, Texas 79408

(806)775-1100
FAX (806)775-7930
E-mail: LMurphree@lubbockcda.com

## Certificate of Service

I certify that a true copy of the foregoing brief has been delivered to Jesse Mendez, Attorney for Appellant, by e-mail delivery to jessemendez@suddenlink.net on July 9, 2015.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782


By: /s/ Lauren Murphree
Lauren Murphree

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), I further certify that, relying on the word count of the computer program used to prepare the foregoing State's Response, this document contains 3,267 words, inclusive of all portions required by TEX. R. APP. P. 9.4(i)(1) to be included in calculation of length of the document.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782


By: /s/ Lauren Murphree
Lauren Murphree

16