Affirmed and Memorandum Opinion
filed July 29, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-01149-CR



Steven Mark
Weinstein, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 339th District Court

Harris County, Texas

Trial Court
Cause No. 1167730



 

Memorandum Opinion

Appellant Steven Mark Weinstein appeals his
conviction for murder, contending that the evidence presented is both legally
and factually insufficent to support the trial court’s judgment.  We affirm. 

I. Factual and Procedural
Background

Police officers were dispatched in March 2007, to a townhome
complex in response to complaints about a foul odor emanating from appellant’s townhome. 
An officer believed the odor to be that of human remains, and a cadaver dog called
to the complex confirmed the officer’s suspicion.  The officers obtained a
search warrant.  Inside a garage belonging to appellant, in the trunk of a
vehicle, officers discovered the partially decomposed body of the complainant
Jerry Glaspie, bound at the wrists and ankles.  Some type of netting or duct
tape was wrapped around the face and neck.  Officers also discovered an engine
hoist in the garage and various insecticides, cleaning agents, and deodorizers
throughout the house.  

Appellant was charged by indictment with
the murder, by strangulation with a deadly weapon, which, according to the
indictment, was an unknown object.  Appellant pleaded “not guilty” to the
charge, and the case proceeded to trial by jury.  

At trial, officers in the investigation
testified that the complainant was last seen alive on January 29, 2007, when he
borrowed a vehicle from a friend with whom appellant lived.  According to the friend,
the complainant was a known drug dealer who regularly borrowed his friend’s
vehicle to promote his narcotics business.  The complainant had told his friend
that he was making several stops, one of which was at appellant’s house.  That
evening, the complainant’s friend received several phone calls from concerned friends
regarding the complainant’s whereabouts, because the complainant had not
stopped by as planned.  The next day, the complainant’s friend filed a missing-person
report with the Houston Police Department.  A week later, the borrowed vehicle
was found several blocks from appellant’s home, showing no signs of theft; the
complainant was still missing.  

            According to mutual friends
of both the complainant and appellant, appellant and the complainant had an
estranged relationship after a partnership between the two for a large narcotics
transaction had failed.  In August or September of 2006, appellant and the
complainant traveled to Dallas to purchase a large quantity of methamphetamines. 
Appellant provided approximately $14,000 for the narcotics and returned to
Houston while the complainant remained in Dallas to purchase the
methamphetamines.  After staying in Dallas for an extended period of time, the
complainant returned to Houston approximately two months later without any
drugs or appellant’s money.  

According to some of the mutual friends, during the
time the complainant was in Dallas, appellant became very angry with the
complainant and tried to contact him about the money.  The complainant had stopped
taking appellant’s phone calls, so appellant contacted several of the
complainant’s friends by phone or through a social website.  According to the
complainant’s friends, on several occasions, appellant tried to get his money
back by convincing friends to help trick the complainant to return to Houston
so appellant could “scare” or “hurt” him.  A friend of both appellant and the
complainant testified that appellant showed interest in drugging the
complainant, tying him up, and bringing him back to Houston to try and get his
money back.  

Residents who lived in appellant’s complex testified
to calling the police several times in February or March of 2007, complaining
about a horrible odor emanating from appellant’s unit.  The residents claimed
to have left several notes for appellant regarding the odor that was coming
from appellant’s garage.  According to testimony from residents and
investigating officers, when questioned about the odor, appellant explained that
his former roommate left rotting meat hidden throughout his home and that he
was in the process of cleaning up the mess.  According to an investigating
officer, when asked for permission to enter the garage, appellant refused to allow
police officers to enter.  

Appellant’s cellmate testified that while in jail
awaiting trial, appellant discussed committing murder and demonstrated on the
cellmate how he accomplished the complainant’s murder by placing a towel around
the cellmate’s neck and lightly choking him.  The cellmate testified appellant claimed
to have been mad at the complainant for taking his money.  The cellmate
testified that appellant stated how he could no longer open the trunk of the
vehicle because of the swelling of the complainant’s decomposing body, and, in
order to open the trunk, appellant purchased an engine hoist.  The cellmate
also said appellant described the horrible odor coming from the body and how he
tried to mask the scent with deodorizers and ice.  

An autopsy report admitted into evidence at trial reflected
that the complainant’s death was a homicide, but was inconclusive as to the
cause of death due to the advanced decomposition of the body.  The medical
examiner testified that bones in the complainant’s neck had separated, which
could have been caused by strangulation.  He explained that death by
strangulation could have been facilitated by a towel, an arm, human hands, or
an unknown object.  Also, the medical examiner concluded duct tape around the
neck of the complainant’s body, which appeared to have slipped from the complainant’s
face during decomposition, may have asphyxiated the complainant.  The medical
examiner testified that he does not typically find bindings and ligatures on a person
who dies a natural death, which was unlikely in this case.

A jury found appellant guilty of murder, sentenced
him to thirty years’ confinement, and assessed a $10,000 fine.  

II.  Sufficiency of the Evidence

In two issues appellant challenges the legal and
factual sufficiency of the evidence to support his conviction.  In evaluating a
legal-sufficiency challenge, we view the evidence in the light most favorable
to the verdict.  Wesbrook
v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not
whether we, as a court, believe the State’s evidence or believe that
appellant’s evidence outweighs the State’s evidence.  Wicker v.
State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not be
overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt.  Matson v.
State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of
fact, “is the sole judge of the credibility of the witnesses and of the
strength of the evidence.”  Fuentes v.
State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to
believe or disbelieve any portion of the witnesses’ testimony.  Sharp v.
State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with conflicting
evidence, we presume the trier of fact resolved conflicts in favor of the
prevailing party.  Turro v.
State, 867
S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt, we must affirm.  McDuff v.
State, 939
S.W.2d 607, 614 (Tex. Crim. App. 1997).  This standard is the same
whether the evidence is direct or circumstantial.  Green v. State, 840
S.W.2d 394, 401 (Tex. Crim. App. 1992).  The question is not whether a rational
jury could have entertained a reasonable doubt of guilt, but whether it
necessarily would have done so.  See Swearingen v. State, 101 S.W.3d 89,
96 (Tex. Crim. App. 2003).

In contrast, when evaluating a challenge to the
factual sufficiency of the evidence, we view all the evidence in a neutral
light and inquire whether we are able to say, with some objective basis in the
record, that a conviction is “clearly wrong” or “manifestly unjust” because the
great weight and preponderance of the evidence contradicts the jury’s verdict.  Watson v.
State, 204
S.W.3d 404, 414–17 (Tex. Crim. App. 2006).  It is not enough that
this court harbor a subjective level of reasonable doubt to overturn a
conviction that is founded on legally sufficient evidence, and this court
cannot declare that a conflict in the evidence justifies a new trial simply
because it disagrees with the jury’s resolution of that conflict.  Id. at 417.  If this court
determines the evidence is factually insufficient, it must explain in exactly
what way it perceives the conflicting evidence greatly to preponderate against
conviction.  Id. at 414–17.  Our
evaluation should not intrude upon the fact finder’s role as the sole judge of
the weight and credibility given to any witness’s testimony.  See Fuentes, 991 S.W.2d at 271.  Unless
issuing a memorandum opinion, in conducting a factual-sufficiency review, we
are to address the evidence appellant claims is most important in allegedly
undermining the jury’s verdict.  Sims v.
State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

A person commits the offense of murder if the person
intentionally or knowingly causes the death of an individual or intends to
cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of an individual.  Tex.
Penal Code Ann. § 19.02(b)(1), (2) (Vernon 2003).  A person acts with
intent “with respect to the nature of his conduct or to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause
the result.”  Tex. Penal Code Ann.
§ 6.03(a) (Vernon 2003).  A person acts knowingly with respect to his conduct
when that person is aware the conduct is reasonably certain to cause the
result.  Tex. Penal Code Ann. § 6.03(a)
(Vernon 2003).

Appellant contends that there is no evidence he
caused the complainant’s death or intended to cause the complainant’s death.  Appellant
claims the only evidence presented at trial shows his intention to scare the
complainant, not the intent to commit murder.  Intent, being a question of
fact, is in the sole purview of the jury.  Brown v. State, 122 S.W.3d.
794, 800 (Tex. Crim. App. 2003).  A jury may rely on collective common sense
and common knowledge when determining intent.  Ramirez v. State, 229
S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.).  Intent also may be
inferred from the circumstantial evidence surrounding the incident, which
includes acts, words, and conduct of the accused.  See Tex. Code Crim. Proc. Ann. art. 38.36(a)
(Vernon 2005); Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App.
1995).  Each fact need not point directly or independently to the guilt of
appellant; the verdict will be upheld as long as the cumulative effect of all
the incriminating facts are sufficient to support the verdict.  See Guevara
v. State, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004) (stating that although
each piece of evidence lacked sufficiency in isolation, the consistency of the
evidence and the rational inferences drawn were sufficient to support the
State’s theory that accused was a participant in the murder of his wife). 

Testimony was presented at trial that tension and
conflict arose between appellant and the complainant when the complainant returned
from Dallas without appellant’s money or narcotics.  See Alexander v. State,
229 S.W.3d 731, 740 (Tex. App.—San Antonio 2007, pet. ref’d) (considering
intent in light of accused’s actions and statements during and after the
incident, the relationship between accused and the complainant, as well as the
extent of the complainant’s injuries to find evidence legally and factually
sufficient).  Witnesses testified that on several occasions appellant expressed
a desire to find the complainant and either “scare” or “hurt” him.  See Jackson
v. State, 115 S.W.3d 326, 329 (Tex. App.—Dallas 2003), aff’d, 160
S.W.3d 568 (Tex. Crim. App. 2005) (holding that evidence was legally and
factually sufficient to show that defendant had intent to kill his brother when
earlier that evening the two were seen fighting, there was testimony that
defendant threatened to hurt his brother, and defendant admitted to hitting his
brother in the head with a hammer).  

Appellant also contends that the cause of death could
not be determined.  The medical examiner determined the manner of death to be a
homicide.  Although the final determination to the cause of death was inconclusive,
the medical examiner testified that, most likely, the complainant died by an
asphyxia mechanism.  See Scott v. State, 732 S.W.2d 354, 359 (Tex. Crim.
App. 1987) (concluding that it is immaterial that the exact cause of death
could not be determined).  The medical examiner stated that an asphyxia
mechanism could include asphyxiation by hands, a towel, duct tape around the
nose and mouth, or an unknown object.  The medical examiner also testified that
the disarticulation of the complainant’s neck bones was consistent with,
although not necessarily caused by, strangulation.  

Testimony was presented that when the complainant was
last seen alive, he was on his way to see appellant in order to discuss the
missing money and drugs.  See Reeves v. State, 969 S.W.2d 471, 479 (Tex.
App.—Waco 1998, pet. ref’d.) (involving evidence that the accused was the last
to see the complainant alive, had the best opportunity and motive to kill the complainant,
and attempted to get rid of incriminating evidence as legally sufficient evidence
to support that the accused caused the complainant’s death).  The complainant’s
decomposed body was found bound and gagged in the trunk of appellant’s vehicle inside
appellant’s garage.  See id.  The vehicle which the complainant had been
seen driving that day was found in close proximity to appellant’s home without
any signs of foul play or theft.  These factors, especially when combined, can
be considered evidence of appellant’s intent to cause the complainant’s death
and would support a trier of fact’s conclusion to that effect.  See id.
at 479–80. 

Appellant claims that although the complainant’s body
was found at his home, there was no confession other than his cellmate’s
unreliable testimony.  The jury, as the trier of fact, serves as the sole judge
of the credibility of the witness and of the strength of the evidence, and the
jury was free to accept or reject any portion of the witnesses’ testimony.  See
Sharp, 707 S.W.2d at 614.  The jury was free to believe or disbelieve the cellmate’s
testimony as to appellant’s comments and demonstration of strangling the
complainant.  See Durant v. State, 688 S.W.2d 265, 267 (Tex.
App.—Fort Worth 1985, pet. ref’d) (stating the jury was entitled to consider
the witness’s past criminal record and relationship with the accused in
evaluating testimony and weighing credibility).  The cellmate testified that
appellant confessed to strangling the complainant and placing his body in the
trunk of appellant’s car.  The cellmate testified that appellant, using a
towel, demonstrated the technique he used to strangle the complainant.  According
to the cellmate’s testimony, appellant explained how the complainant’s body
began to swell and that he purchased an engine lift in order to open the trunk
of the car.  The cellmate testified that appellant described how he attempted
to cover the odor of the decomposing body with deodorizers and ice.  The police
found an engine lift in the garage and deodorizers and cleaning supplies
throughout the house and garage.  Though no one claims to have seen the
offense, the record supports a finding that the evidence is sufficient to
satisfy causation.  See Herrero v. State, 124 S.W.3d 827, 832–35
(Tex. App.—Houston [14th Dist.] 2003, no pet.) (upholding a conviction for murder
where witnesses testified that defendant described how he committed the crime,
and the testimony was corroborated by an officer examining the body at the
scene); see also Swearingen, 101 S.W.3d. at 98 (stating the
corroboration between the forensic evidence and the rendition of the crime in a
letter written by the accused was factually sufficient and did not undermine
the great weight and preponderance of the evidence).  

Although appellant claims there was no evidence to
show intent, guilt can be shown by the accused’s concealment of incriminating
evidence and contradictory statements.  Guevara, 152 S.W.3d at 50 (involving
evidence that appellant made several false statements to authorities, which
suggested appellant’s complicity in the crime).  “Attempts to conceal
incriminating evidence, inconsistent statements, and implausible explanations
to the police are probative of wrongful conduct and are also circumstances of
guilt.”  Id.  On several occasions, appellant explained to his neighbors
that the foul odor emanating from his garage was from rotting meat a former
roommate had left in the home.  The police did not find any rotting meat on the
premises, but instead discovered the complainant’s body decomposing in a
vehicle in appellant’s garage.  Testimony at trial reflects that appellant made
several statements to the police and residents of his complex about the source
of the odor.  See id.; Alexander, 229 S.W.3d at 740 (stating
evidence was legally and factually sufficient to support jury’s finding that defendant
intentionally caused the death of victim when defendant provided inconsistent
statements about how the victim’s injuries occurred and those statements
contradicted medical evidence).  Furthermore, the cellmate testified that appellant
claimed to have used disinfectants and deodorizers to mask the odor;
investigators found the garage floor covered in a white substance resembling
baking soda, apparently used in an attempt to mask the odor.  See Reeves,
969 S.W.3d at 479 (providing the jury was free to infer that the defendant was
disposing of incriminating evidence).  Appellant’s guilt may be inferred from the
cellmate’s testimony that appellant attempted to conceal the odor of the
decomposing body with cleaning supplies and baking soda.  See id. 

Viewing the evidence in the light most favorable to
the verdict, we conclude a rational trier of fact could have found the elements
of murder beyond a reasonable doubt.  Alexander, 229 S.W.3d at
740.  Likewise, viewing the evidence in a neutral light, we are not able to say
with some objective basis in the record that the jury’s determination that
appellant committed the charged offense is clearly wrong or manifestly unjust
because the great weight and preponderance of the evidence contradicts the
jury’s verdict.  Id.  We conclude the evidence is legally and factually
sufficient to support the murder conviction, and we overrule appellant’s two
issues on appeal.

Having overruled the
appellant’s challenges to the sufficiency of the evidence, we affirm the trial court’s
judgment.

 

                                                                                                                

                                                                                                /s/          Kem Thompson
Frost

Justice

 

 

Panel consists of Justices Frost, Boyce, and Sullivan.

Do Not Publish —
Tex. R. App. P. 47.2(b).