NO. 07-10-00069-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 31, 2012

STEVE E. GAITHER, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-418,617; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant Steve E. Gaither appeals from his jury conviction of the offense of possession of cocaine, with intent to deliver, in an amount more than four grams and less than 200 grams[1] and the resulting sentence of twenty-two years of imprisonment and a $10,000 fine. Through six errors, appellant contends the trial court reversibly erred. We disagree and affirm.

---

[1] Tex. Health & Safety Code Ann. § 481.112(d) (West 2011).

Background

After appellant's plea of not guilty, evidence was introduced to show that Lubbock police responded to a domestic disturbance call from a Lubbock apartment. An officer saw a man, later identified as appellant, walking out of the apartment. Appellant ran, disregarding directions to stop, but was caught, subdued and arrested. In the search of his person that followed his arrest, officers found in appellant's front pants pocket two baggies containing a white powdery substance and a baggy of a green leafy substance. Testimony showed one baggy contained 0.82 grams of cocaine, the second, 18.33 grams of cocaine. An officer testified the other substance found on appellant's person was marijuana but it was not tested. A narcotics investigator testified the 0.82 grams of cocaine was consistent with a "user amount" while the 18.33 grams was consistent with a "dealer amount."

The court's charge gave the jury the options of finding appellant not guilty, guilty of possession of the cocaine or guilty of its possession with the intent to deliver. The jury found him guilty of the greater offense.

Analysis

Sufficiency of the Evidence

In appellant's first issue, he points out there is no direct evidence he had the intent to deliver the cocaine in his possession and argues the circumstantial evidence of that intent is insufficient to sustain his conviction.

We evaluate the sufficiency of evidence supporting criminal convictions under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d

2

560 (1979); *Brooks v. State,* 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010) (plurality opinion). That standard requires that we view all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App. 1998).

Intent to deliver can be proven by circumstantial evidence. *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex.App.--Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex.Crim.App. 1997). Courts also infer the intent with which a person is acting from his acts, words and conduct. *Patrick v. State,* 906 S.W.2d 481, 487 (Tex.Crim.App. 1995). With regard to the intent to deliver drugs, pertinent factors include (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging of the drugs, (4) the presence or absence of drug paraphernalia, (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user. *Williams v. State,* 902 S.W.2d 505, 507 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). Possession of multiple types of drugs is also a factor to be considered in evaluating intent to deliver. *Jordan v. State*, 139 S.W.3d 723, 726 (Tex.App.—Fort Worth 2004, no pet.). These are evaluative factors; evidentiary sufficiency does not require the presence of each factor.

No evidence specifically described the apartment complex at which appellant was arrested as a common location for drug transactions. An officer testified appellant "was the only one around" the apartment complex he saw when he arrived. When

3

arrested, appellant possessed neither paraphernalia for drug use nor that associated with drug selling. As noted, the cocaine was in two packages. No evidence showed appellant had any significant amount of cash but he was carrying both cocaine and marijuana when he was arrested. Appellant introduced a video from the in-car camera showing his behavior in the patrol car that transported him to jail, and argued his slurred speech indicated he was under the influence of an intoxicant. The video was not strong evidence that appellant was a drug user, and during the guilt-innocence stage of trial the jury saw no additional evidence bearing on that question other than his possession.

The Lubbock police narcotics investigator who testified was not involved with appellant's arrest, but testified to his experience with narcotics cases and expressed opinions. He testified he had 22 years' experience as a police officer, the last six as an investigator of narcotics cases. He told the court that, based on his experience with cocaine users, a single use of powder cocaine would consume, on average, about half a gram of the substance. He also said a single use could involve "from .30 to .50 grams." Asked how often a "typical powder cocaine user" would use the drug during a day, the investigator mentioned two times a day, and said it "may be four," but said the consumption "totally depends upon [the user's] habit."

Agreeing with the prosecutor that the roughly 18 grams of powder contained in the larger baggy represented about 36 "hits," the investigator expressed the opinion that amount represented a "dealer amount," asserting that "typical" cocaine "addicts" do not carry that amount of cocaine on their person. *See, e.g., Fox v. State,* No. 08-02-00160-CR, 2003 Tex.App. LEXIS 8576, at *9 (Tex.App.—El Paso, October 2, 2003, no pet.) (mem. op., not designated for publication) (officer testimony that 6.49 grams of crack is

4

more than any individual user would have for their personal use, but it would not be an uncommon amount for a low-level dealer and it was "highly unlikely that a couple would have that much crack cocaine for their personal use"). He further agreed with the prosecutor that, at an assumed rate of four uses a day, the amount represented "nine days worth of hits." He opined its purchase price "probably" would have been between $350 and $400. He further testified that if sold by the half-gram, powder cocaine would bring between $30 and $50 per half-gram.

Cross-examined, the investigator acknowledged that a user of cocaine could consume more than a half-gram at a time, and that there was no "magic number" of grams to distinguish a "user amount" from a "dealer amount." He acknowledged also that a person's possession of packaging materials and cash in small denominations were indicators the person was selling drugs. He maintained, though, that he had never seen anyone "just carrying around [18 grams] for personal use."

Other Texas courts have relied on opinion testimony like that given by the investigator here to support a finding of intent to deliver drugs. *See, e.g., Jordan*, 139 S.W.3d at 726-27; *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.—Dallas 2003, no pet.); *Mack v. State*, 859 S.W.2d 526, 529 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Misner v. State*, No. 04-03-00323-CR, 2004 Tex.App. Lexis 3085 (Tex.App.—San Antonio April 7, 2004, pet. ref'd) (mem. op., not designated for publication). The jury was free to accept the investigator's description of the behavior of typical cocaine possessors and users, and in particular to accept as accurate his testimony of the amounts of powder cocaine typically consumed by users. More importantly, at the guilt-innocence stage of the trial, with no evidence of drug-use paraphernalia or convincing

5

evidence of personal drug use,[2] the jury well could have regarded appellant as a non-user of the cocaine he was carrying. If so, a conclusion he intended to transfer the cocaine to another[3] would be virtually self-evident.

Even if the jury regarded appellant as a user, we find the evidence it heard, viewed in the light most favorable to its verdict, permitted the conclusion appellant possessed the cocaine with the intent to deliver it to another. We resolve appellant's first issue against him.

Jury Argument

Appellant's second through fifth issues raise complaints concerning the prosecutor's jury arguments. Twice during argument in the guilt-innocence stage of trial and twice during punishment argument, appellant objected to statements of the prosecutor. The trial court sustained the objections on each occasion, instructed the jury to disregard the statements, but denied appellant's requests for a mistrial. Appellant argues the court erred by not granting a mistrial.

Sustained Objections

We review a trial court's denial of a motion for a mistrial under an abuse-of-discretion standard. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). A

---

[2] During the punishment stage of trial, appellant presented testimony showing his use of cocaine and marijuana.

[3] *See* Tex. Health & Safety Code Ann. § 481.002(8) (West 2011) (defining "deliver").

mistrial is an extreme remedy for prejudicial events that occur at trial and should be exceedingly uncommon. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996). A mistrial is required only when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced in the minds of the jury. *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex.Crim.App. 1999); *Herrero v. State*, 124 S.W.3d 827, 836 (Tex. App.--Houston [14th Dist.] 2003, no pet.). In analyzing whether a prejudicial event is so harmful as to warrant a mistrial, we consider the prejudicial effect, the curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). In most instances, an instruction to disregard the objected-to remarks will cure the error. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim.App. 2000). Because curative instructions are presumed effective to withdraw from jury consideration almost any evidence or argument that is objectionable, trial conditions must be extreme before a mistrial is warranted. *Bauder*, 921 S.W.2d at 700.

The law provides for, and presumes, a fair trial free from improper argument by the state. *Thompson v. State*, 89 S.W.3d 843, 850 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). There are four permissible areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to the argument of opposing counsel, and (4) pleas for law enforcement. *Id.*

During argument in the guilt-innocence phase of trial, the prosecutor made the statements, "35 different people can get ahold of this poison. Children in our community—" Later, the prosecutor argued to the jury, "Drug dealing is a business. It's

just like any other business except it's illegal, but Steve Gaither is a businessman, and that's what he was doing that morning. He was [peddling] his business, and his business—". The jury had heard evidence appellant possessed an amount of drugs under circumstances indicating an intent to deliver them. We find the court's instruction that the jury disregard the prosecutor's argument adequately addressed any prejudice from either argument. *See Weinn v. State,* 281 S.W.3d 633, 641 (Tex.App.—Amarillo 2009), *aff'd* No. PD-0338-09, 2010 Tex.Crim.App. LEXIS 793 (2010) (holding argument asking the jury to consider who drugs might be delivered to can be a proper plea for law enforcement).

During punishment summation, the State started its argument by stating "I know it's been a long couple of days, but here you are at the end, and you're now faced with the task of answering the question of what does it mean –what does it—what is it worth in Lubbock County when someone sells drugs on our streets." A bit later, the prosecutor stated "It is Steve Gaither's fault. Put the blame where it goes, at his feet. He made the decisions to bring this poison into our community. He may have used it as well, but he's the one that made the decision to bring this kind of poison into our community and to further put it out on our streets, make it available to other people to--". On both occasions, appellant objected that the argument was outside the record. As noted, the trial court sustained the objections and provided an instruction to disregard.

On appeal, the State contends the first argument was a proper plea for law enforcement asking the jury to determine the proper punishment for the crime of which they had just convicted appellant. *See Weinn,* 281 S.W.3d at 641. It argues the second argument was a proper summation of the evidence showing appellant's intent to deliver.

*See Fant-Caughman v. State,* 61 S.W.3d 25, 28 (Tex.App.—Amarillo 2001, pet. ref'd). In any event, after careful review of the record, after considering the arguments alone and cumulatively, we find no abuse of discretion by the trial court in denying each of appellant's requests for a mistrial.  We overrule his second, third, fourth and fifth issues.

Overruled Objection

In appellant's sixth issue, he argues the trial court erred by overruling his objection to the State's argument during the punishment stage in which a plea for the jury to abide by the expectations of the community through its sentence was advanced. The State argued "When somebody does this kind of crime, what is it worth?  You're the ones that get to make that decision. People always say why don't they do something about people who have cocaine on them, who sell it?  Why don't people do something about it?  Appellant objected that the argument was a plea to community expectations.[4]

The State asserts the argument was a proper plea for law enforcement and directs us to several cases in which similar arguments were made and upheld. *See, e.g., Haynes v. State,* 627 S.W.2d 710, 714 (Tex.Crim.App. 1982) (panel op.); *Luna v. State,* No. 07-02-0058-CR, 2003 Tex.App. LEXIS 7344 at *2-4 (Tex.App.—Amarillo Aug. 27, 2003, no pet.). The State also contrasts this argument with those that ask for a particular sentence, such as *Cortez v. State,* 682 S.W.2d 419, 420 (Tex.Crim.App. 1984) (telling the jury only a life sentence would satisfy the people of the community).

---

[4] Additional statements were made that appellant complains about on appeal. However, he did not object to those statements at trial and thus has not preserved his claims about those statements for our review.  Tex. R. App. P. 33.1.  Even if we were to consider those statements, it would not change the outcome of the appeal.

9

We review a court's overruling of an objection to an improper jury argument under a reversible-error standard. *Wesbrook*, 29 S.W.3d at 115. An argument constitutes reversible error when it violates a statute, injects new and harmful facts into the case, or is manifestly improper. *Id.*; *Ponce v. State,* 299 S.W.3d 167, 174-75 (Tex.App.—Eastland 2009, no pet.). We review the record in its entirety to determine whether any erroneous statements were made, and if so, we determine whether they were so prejudicial as to deprive the defendant of a fair trial. *Johnson v. State*, 233 S.W.3d 109, 114 n.4 (Tex. App.--Houston [14th Dist.] 2007, no pet.); *Jones v. State,* No. 14-07-00715-CR, 2010 Tex.App. LEXIS 1540, at *7-8 (Tex.App.—Houston [14th Dist.] March 4, 2010, no pet.) (mem. op., not designated for publication).

Case law examples of improper demands to meet community expectations include the argument, "Now, the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life [imprisonment]." *Cortez,* 683 S.W.2d at 420. In another example, the prosecutor told the jury, "So I ask you, this is a hard decision that you have to make, but I will tell you on behalf of the State of Texas, an aggravated sexual assault such as this, probation is not what this community and what the State would want." *Mata v. State,* 952 S.W.2d 30, 33 (Tex.App.--San Antonio 1997, no pet.). *See also Smith v. State,* 966 S.W.2d 111, 112-13 (Tex.App.—Beaumont 1999, pet. ref'd) (collecting cases). We agree with the State that the trial court did not err by overruling appellant's objection to this argument.

We overrule appellant's sixth issue, and affirm the judgment of the trial court.


James T. Campbell
Justice


Publish.