

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00438-CR

Roy Edward **HODGE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR5364
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  May 15, 2013

AFFIRMED

Roy Edward Hodge was convicted by a jury of possession of a controlled substance with intent to deliver.  On appeal, Hodge challenges the sufficiency of the evidence to support the jury's findings of possession and intent to deliver.  We affirm the trial court's judgment.

### TRIAL TESTIMONY

Detective Ethan Humble received information from a confidential informant, who had provided reliable information on multiple occasions in the past, that a male and female were dealing crack cocaine from an apartment.  The confidential informant provided a description of

both individuals. Based on this information, Detective Humble set up surveillance of the apartment. After less than one hour, Detective Humble observed someone park his car, knock on the door, and enter and exit the apartment in less than one minute before returning to his car and driving away. Based on his observations and the information he previously was provided by the confidential informant, Detective Humble concluded that the occupants of the apartment were engaged in dealing drugs and obtained a warrant to search the apartment.

Based on concerns for officer safety, the possible destruction of evidence, and the possible presence of weapons, the warrant authorized a forced entry into the apartment. When the seven officers executing the warrant entered the apartment, Detective Humble observed Hodge sitting on a sofa in the living room. Detective Humble testified that Hodge was similar in appearance, race, height, and weight to the description provided by the confidential informant; however, Detective Humble admitted that Hodge was older than the age provided by the confidential informant. Although Hodge was not bald at the time of trial, Detective Humble testified that he was bald or close to bald at the time the warrant was executed, which also matched the confidential informant's description. Detective Humble agreed that Hodge appeared to weigh less than the weight provided in the description; however, Detective Humble noted that the height and weight were approximations. Detective Humble further noted that Hodge could have lost weight and grown hair in the year between his arrest and the trial. The officers also located a female, Danielle Saenz, in the bedroom.

After Hodge and Saenz were handcuffed and seated on the sofa, the officers holstered their weapons. Detective Humble read Hodge and Saenz their *Miranda* rights and then read the search warrant to them. Detective Humble then asked Hodge if he wanted to assist the officers by revealing the location of the narcotics. Detective Humble testified that he asks for assistance so he does not have to "tear through the apartment and spend a lot of time searching" and

"rummaging through [the] apartment." Hodge told Detective Humble that he had some crack cocaine in the freezer and that was all the narcotics he had. Hodge pointed directly to the freezer in the adjacent kitchen. One of the officers opened the freezer and removed eight small individual baggies. After further searching the apartment, a digital scale and two boxes of plastic baggies were also located in a small cardboard box on the headboard of the bed in the bedroom. Based on his training and fifteen years of experience, Detective Humble testified that a scale is used to weigh narcotics and plastic baggies are then used to package the narcotics for sale. Based on the scale, the boxes of plastic baggies, and the eight individually packaged baggies of crack cocaine, Detective Humble testified that the crack cocaine, which he field tested, was not for personal use but was packaged for sale. A second detective who assisted with the execution of the search warrant also testified that the manner in which the crack cocaine was packaged, the scale, and the baggies were an indication that the crack cocaine was packaged for sale. After completing the search and field testing the crack cocaine, Detective Humble asked Hodge if he would be willing to sign a voluntary acknowledgment of contraband, which Hodge signed. Detective Humble testified that Hodge was not threatened or forced to sign the acknowledgment, and no guns were drawn when Hodge signed the form. In both his statements to Detective Humble and in signing the acknowledgment, Hodge admitted that the crack cocaine was his. Detective Humble estimated Hodge signed the acknowledgment within twenty minutes from the officers' entry into the apartment. Detective Humble further testified that he did not believe the search could have been conducted and all of the actions taken within three to five minutes.

Danielle Saenz Enriquez testified that the apartment that was searched belonged to her and Hodge did not keep any of his belongings at her apartment. She testified that she was getting dressed in the bedroom when the police arrived. Saenz testified that the scale and the crack cocaine belonged to her, and the crack cocaine was for her personal use. Saenz testified

that she allowed another friend, Roe Williams, to deal drugs out of her apartment, and she purchased drugs from him. Saenz stated that the officers who executed the warrant kept their guns drawn during the entire time they were present in the apartment. Saenz also stated that she was surprised when Hodge accepted responsibility for the drugs and that Hodge did not use drugs because he had high blood pressure. Saenz stated that Hodge appeared to be under stress when he signed the acknowledgment and that the officers had their guns pointed at Hodge while he signed the form. Saenz stated that Hodge signed the form within two minutes of the officers entering the apartment.

Hodge testified that he had not gained or lost any weight in three or four years, and he never shaved his head. Hodge also testified that he signed the acknowledgment because the officer had guns drawn on him and he felt coerced. Hodge estimated that he signed the form five minutes after the officers entered the apartment. Hodge stated that Saenz previously told him she kept drugs in the freezer. Hodge denied ever seeing the scale or baggies that were recovered from the bedroom. Hodge testified that he did not use drugs. When cross-examined about his two prior convictions for possession of crack cocaine, Hodge testified that he was in possession of the crack cocaine on those occasions to trade the drugs for sex.

### STANDARD OF REVIEW

In reviewing the sufficiency of the evidence to support a criminal conviction, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence." *Id*.

## POSSESSION

When an accused is not in exclusive possession of the place where a controlled substance is found, the evidence must show that "the accused's connection with the drug was more than just fortuitous." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). "Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt." *Id.* Some of the "links" that Texas courts have considered include: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant made incriminating statements when arrested; (5) whether other contraband or drug paraphernalia were present; (6) whether the defendant owned or had the right to possess the place where the drugs were found; and (7) whether the place where the drugs were found was enclosed. *Id.* at 162 n.12. The number of links is not dispositive, "but rather the logical force of all of the evidence, direct and circumstantial." *Id.*

In this case, Hodge told Detective Humble that the crack cocaine was in the freezer. Moreover, he signed an acknowledgment form stating that the crack cocaine belonged to him. Although Hodge and Saenz testified that the officers had their weapons drawn and coerced Hodge into signing the acknowledgment, the jury elected to believe Detective Humble's testimony that the officers' weapons were holstered when Hodge voluntarily signed the acknowledgment. The logical force of Hodge's statements to Detective Humble and his execution of the acknowledgment support the jury's finding that Hodge was in possession of the crack cocaine.

## INTENT TO DELIVER

Intent to deliver can be proven by circumstantial evidence. *Gaither v. State*, 383 S.W.3d 550, 553 (Tex. App.—Amarillo 2012, no pet.); *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Some factors to consider in determining intent include the manner of packaging of the drugs and the presence or absence of drug paraphernalia. *Gaither*, 383 S.W.3d at 553; Kibble, 340 S.W.3d at 18-19. "Expert testimony by experienced law enforcement officers may be used to establish an accused's intent to deliver." *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *see also Kibble*, 340 S.W.3d at 19.

In this case, the crack cocaine was packaged in eight individual baggies, and a scale and additional boxes of plastic baggies were also found in the apartment. Moreover, based on his experience, Detective Humble testified that the crack cocaine was not for personal use but was packaged for sale. This evidence is legally sufficient to support the jury's finding of Hodge's intent to deliver the crack cocaine.

## CONCLUSION

The judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH