

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00452-CR

———————————————

VICTOR ALFONSO LUNA, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR17-00041

Before Gabriel, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Victor Alphonso Luna appeals from his conviction for possession with the intent to deliver one gram or more but less than four grams of methamphetamine. In two points, he argues that the admission of Facebook messages authored by a party to the offense violated the Confrontation Clause and the hearsay rule and that without that evidence, his conviction was supported by insufficient evidence. Because the disputed messages were nontestimonial, the Confrontation Clause was not implicated, and the messages were classified as non-hearsay. Considering the entirety of the record, therefore, the evidence was sufficient to support the jury's finding that Luna possessed the methamphetamine with the intent to deliver.

## I. BACKGROUND

On December 3, 2016, Estuardo Estrada messaged Vanessa Rodriguez through Facebook asking if she knew anyone looking to buy methamphetamine. The two arranged for Rodriguez to buy two grams for $200. Estrada told Rodriguez that a man named Victor would be in a purple Jeep and would bring the drugs to the mailboxes at Rodriguez's apartment complex.

Unbeknownst to Estrada, Rodriguez was actually an undercover police officer, Officer Connor McKinney. McKinney had created Rodriguez and her Facebook page "to keep tabs mostly on individuals in the community [who] are committing crimes . . . to detect and attempt to locate criminal activity." McKinney was waiting

2

near the apartment complex and saw a purple Jeep arrive and park near the mailboxes. Because McKinney noticed that the driver of the Jeep had not signaled his turn into the complex, McKinney initiated a traffic stop. The passenger, Luna, told McKinney that he and the driver, Micah Wallis, were there to pick up their friend Vanessa.

Wallis consented to a search of his car. Tucked between the carpet and plastic molding of the passenger side of the Jeep, McKinney found a bag with a white substance believed to be methamphetamine. McKinney arrested Luna and Wallis. After Wallis and Luna were taken to the county jail, Estrada began messaging Rodriguez again, asking about the drug deal and confirming that he had given "Victor Luna" "two G" to sell to her.[1] McKinney, messaging as Rodriguez, responded that the seller never showed up.

The substance found in the Jeep was later analyzed and found to be 1.83 grams of methamphetamine. Luna was indicted for the knowing or intentional possession with the intent to deliver one or more but less than four grams of methamphetamine. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.112(a). At trial, Luna objected to the admission of the Facebook messages between Rodriguez and Estrada, arguing that the messages were hearsay and, thus, violated his confrontation rights under the United States and Texas Constitutions and under the Code of Criminal Procedure. The State argued that the messages were not hearsay and that the Confrontation

---

[1]Estrada was later tried and convicted of conspiracy to deliver between one and four grams of methamphetamine. *See* Tex. Penal Code Ann. § 15.02.

Clause did not apply to Estrada's nontestimonial statements unknowingly made to an undercover officer. The trial court overruled Luna's objection and admitted the Facebook messages into evidence.

A jury found Luna guilty of the indicted offense and assessed his punishment at twenty years' confinement with a $5,000 fine. The trial court entered judgment in accordance with the jury's verdict. Luna appeals and argues that the messages were inadmissible hearsay and that their admission violated his confrontation rights. In a related point, he contends that because the messages were the only evidence that he had the intent to deliver the methamphetamine, the evidence was insufficient to support his conviction of possession with the intent to deliver.

## II. SUFFICIENCY OF THE EVIDENCE

In our due-process sufficiency review of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But in this review, we must consider all the evidence admitted at trial, even if it was improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). This is true even if we determine a conviction must be reversed and remanded for a new trial based on error in admitting evidence. *Moff*, 131 S.W.3d at 490.

4

The intent to deliver a controlled substance may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, and the presence of the accused where the delivery occurred. *See Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.). The question of intent to deliver was a factual one for the jury to resolve; intent may be inferred circumstantially from the defendant's acts, words, or conduct. *See Espino-Cruz v. State*, No. 14-18-00504-CR, 2019 WL 4621118, at *5 (Tex. App.—Houston [14th Dist.] Sept. 24, 2019, pet. filed); *Avila v. State*, 15 S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (substituted op.).

Luna contends that "but for the Facebook communications," no rational fact-finder could have found beyond a reasonable doubt that Luna had the intent to deliver the possessed methamphetamine.[2] But to assay sufficiency, we must consider the entire record, including the admitted Facebook messages between Estrada and Rodriguez. *See Jackson*, 443 U.S. at 319; *Jenkins*, 493 S.W.3d at 599. These messages revealed that Estrada sent "Victor" to Rodriguez's apartment complex to deliver two grams of methamphetamine and that Rodriguez agreed to pay $200. Estrada told Rodriguez to look for a purple Jeep. After Rodriguez told Estrada that the Jeep had never shown up, Estrada told her that he had sent "Victor Luna" and to look Luna up

---

[2]Luna does not clearly challenge the evidentiary support for the possession element; thus, we do not discuss whether the evidence affirmatively and circumstantially linked Luna to the methamphetamine found in the Jeep. *See generally Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).

on Facebook. Luna was arrested as a passenger in a purple Jeep, which was located in the parking lot of Rodriguez's purported apartment complex. A plastic baggie with close to two grams of methamphetamine was found on the floorboard of the passenger seat wedged between the carpet and the plastic molding. A police investigator experienced in drug trafficking testified that methamphetamine commonly is packaged in a baggy and sold for cash or traded for stolen firearms and that drugs are typically hidden inside a car if a traffic stop is initiated. One such hiding place is "between the plastic in [the] transmission hump of the car, there where the carpet is." The investigator opined that Luna possessed the found methamphetamine with the intent to deliver based on Luna's being in a purple Jeep as Estrada had described to Rodriguez, being at Rodriguez's purported apartment complex looking for "Vanessa," and possessing the amount of methamphetamine that Rodriguez had agreed to buy.

Viewed in the light most favorable to the jury's verdict, we conclude that a rational fact-finder could have found that Luna unlawfully possessed between one and four grams of methamphetamine, which he intended to deliver to Rodriguez in exchange for $200. *See Espino-Cruz*, 2019 WL 4621118, at *6; *McIntyre v. State*, Nos. 10-12-00321-CR, 10-12-00322-CR, 10-12-00323-CR, 2013 WL 5773343, at *12 (Tex. App.—Waco Oct. 24, 2013, pet. ref'd) (mem. op., not designated for publication); *Gaither v. State*, 383 S.W.3d 550, 553–54 (Tex. App.—Amarillo 2012, no

6

pet.); *Williams v. State*, 902 S.W.2d 505, 507–08 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

As part of his sufficiency argument, Luna contends that because he was not put on notice that he would be tried for conspiracy and because the State did not prove the elements of conspiracy, his conviction must be reversed because it was based on conduct by a co-conspirator—Estrada. *See* Tex. Penal Code Ann. § 15.02. But "[c]o-conspirator statements can be used against a defendant even though the defendant is not charged with a conspiracy offense." *Byrd v. State*, 187 S.W.3d 436, 440 (Tex. Crim. App. 2005). And as we previously recognized, even if Estrada's Facebook messages were erroneously admitted, we would be required to consider them in our sufficiency analysis. We overrule point two.

### III.  ADMISSION OF ESTRADA'S STATEMENTS

In his first point, Luna argues, consistent with his trial-court objection, that the trial court abused its discretion by admitting the Facebook messages between Estrada and Rodriguez because their admission violated his confrontation rights under the United States and Texas Constitutions and under the Code of Criminal Procedure. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 15; Tex. Code Crim. Proc. Ann. art. 1.25. We review the admission of these messages for an abuse of discretion, giving due deference to any factual determinations and reviewing de novo the application of those facts to the law regarding Luna's confrontation rights. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *Damm v. State*, No. 02-16-00380-CR,

2018 WL 1528605, at *10 (Tex. App.—Fort Worth Mar. 29, 2018, pet. ref'd) (mem. op., not designated for publication). The Texas Constitution and Article 1.25 do not provide greater protections than does the United States Constitution; thus, we will address this issue under the confrontation rights guaranteed by the Sixth Amendment. *See King v. State*, 189 S.W.3d 347, 361–62 (Tex. App.—Fort Worth 2006, no pet.).

The Confrontation Clause of the Sixth Amendment bars the admission of out-of-court testimonial hearsay statements of a declarant unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford v. Washington*, 541 U.S. 36, 42 (2004). The starting point of any confrontation analysis is a determination of whether the statements at issue were testimonial or nontestimonial. *See Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011); *Vinson v. State*, 252 S.W.3d 336, 337 (Tex. Crim. App. 2008); *cf. Infante v. State*, 404 S.W.3d 656, 664 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The Confrontation Clause does not apply to all out-of-court statements introduced at a trial; it applies only to hearsay that is 'testimonial' in nature."). A statement is testimonial and subject to the Confrontation Clause if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52; *see Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.") In

8

other words a testimonial statement will appear more formal and will be more similar to trial testimony than a nontestimonial statement will be. *See Sanchez*, 354 S.W.3d at 485.

Here, the Facebook messages were not written under testimonial circumstances. Even though Estrada unwittingly wrote the messages to an undercover police officer, they were not solemn declarations made for the purpose of establishing a fact but were casual statements that served the purposes of selling methamphetamine and of furthering a criminal enterprise. As such, they were nontestimonial, falling outside the protections of the Confrontation Clause. *See Brown v. Epps*, 686 F.3d 281, 288 (5th Cir. 2012); *State v. Reyes*, No. 13-13-00229-CR, 2015 WL 5576596, at \*3–4 (Tex. App.—Corpus Christi–Edinburg June 25, 2015, no pet.) (mem. op., not designated for publication); *King v. State*, 189 S.W.3d 347, 359 (Tex. App.—Fort Worth 2006, no pet.); *see also Davis*, 547 U.S. at 825 (noting "statements made unwittingly to a Government informant" were "clearly nontestimonial").

Even so, the State was required to show that the messages did not violate the hearsay rule. *See Davis*, 547 U.S. at 821. Estrada, acting in concert with Luna, wrote the messages during and in furtherance of a criminal conspiracy to sell methamphetamine to Rodriguez; thus, they were not classified as hearsay and were admissible. *See* Tex. R. Evid. 801(e)(2)(E); *King*, 189 S.W.3d at 359–60. We conclude

9

that the admission of the Facebook messages was not an abuse of the trial court's discretion and we overrule point one.

## IV. CONCLUSION

The evidence was sufficient to show that at the time Luna possessed the methamphetamine, he had the intent to deliver. The admission of the Facebook messages regarding Estrada's conversations with Rodriguez about the drug deal was not an abuse of discretion because the statements were nontestimonial, falling outside the protection of the Confrontation Clause, and because they were not hearsay. Thus, we overrule Luna's points and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 12, 2019

10