

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00173-CR

---

KEVIN RUNELS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CR-0329, Honorable William R. Eichman II, Presiding

---

July 6, 2023

## MEMORANDUM OPINION

Before QUINN, C. J., and PARKER and YARBROUGH, JJ.

Appellant, Kevin Runels, was convicted by a jury of possession with intent to deliver more than four hundred grams of cocaine.[1]  Punishment was enhanced to confinement for forty years.[2]  On appeal, he asserts the State's evidence at trial was

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f).

[2] Prior to sentencing, Appellant pleaded "true" to enhancements for three prior convictions for felony possession of controlled substances.

legally insufficient to sustain his conviction for "possession" because he was merely in the house where the cocaine was found. We affirm.

## BACKGROUND

In February 2022, an indictment issued alleging that on or about September 28, 2018, Appellant did knowingly and intentionally possess, with the intent to deliver, a controlled substance, cocaine, in an amount by aggregate weight, including any adulterants and dilutants, of 400 grams or more. Three weeks later, a three-day jury trial was held.

At trial, LPD Detective Joshua Reid testified that on September 28, 2018, he executed a search warrant with SWAT's assistance.[3] The SWAT team was deployed because of an expectation the front and back doors and windows of the house were barricaded with multiple people in the house.

After the warrant was executed, LPD Detective Billy Mitchell photographed the home's interior. He described the residence as a "trap house" utilized for the purpose of selling drugs because: fortification of its windows and doors; lack of furniture; one air mattress; the smell of trash; and no evidence anyone was living there. The only furniture was a dining room table and a couch which had been used to further barricade the front entry. There were dirty dishes, a computer, gaming console, and some construction

---

[3] Appellant, also known as K-Ro, was the target of the search warrant. Martha Castillo, an LPD detective and DEA task force officer, with eight-years' experience with drug-related crimes, had recently participated in a controlled narcotics purchase between a dealer and a confidential informant wearing a recording device. Prior to the controlled purchase, $45 in buy money was logged and photographed by officers.

material. He also noticed an electric grease fryer on the hallway floor next to the bathroom and grease on the hallway floor.

Detective Castillo testified there were five persons in the house. Four were identified as drug users and/or lookouts and arrested on outstanding warrants. Appellant was discovered in the kitchen. He was the only occupant with grease from the fryer on his shoes, and he had more than $400 cash in his pants pocket.[4] Of the cash found in Appellant's pants pocket, officers identified $45 as the buy money photographed and logged before the controlled narcotics purchase leading to the search warrant.

Detective Castillo also testified that, upon entry, the grease in the deep fryer was scorching hot with a razor blade inside the oil. On examination of the grease, she identified what appeared to be cocaine base which she collected for laboratory testing. The white rock-like substance tested positive for cocaine at the scene.

During their search, the officers also discovered loose rocks suspected to be cocaine, a box of unused razor blades commonly used to shave cocaine from the rocks, a Pyrex measuring cup containing a white residue, white powder on the dining room table near a working digital scale, a plate with grease on it, and baggies commonly used to package drugs for sale also containing a white residue. Based on her training and experience, she identified Appellant as the person in the house dealing drugs. Appellant was placed under arrest.

---

[4] Only one of the other arrestees had cash on his person—five one-dollar bills. None of the other arrestees had cooking grease on their clothes or shoes.

John Keinath, a DPS forensic scientist, tested the substances collected from the "trap house" and identified them as containing cocaine and weighing 3.11 kilograms. In this case, he testified the offense fell within Penalty Group 1 and weighed over 400 grams.

Sergeant Tony Williams, a DEA task force officer, testified without objection as a narcotics expert. Williams agreed with other officers the residence was a "trap house" based upon the lack of furniture, unkempt or dirty premises, a refrigerator containing little food, several bedrooms but only one air mattress, the presence of the drug paraphernalia covered in white powder, and the large amount of cocaine base in the grease fryer. As such, he characterized the residence as the "dealer's turf."

Regarding four of the five arrestees in the house, Williams testified that typically, drug users carry little money. Once they get $10 or $20 dollars, they head to their dealer to purchase drugs. He also noted it was uncommon for someone buying drugs to have more money than the cost of what they were buying.

Appellant, on the other hand, had more than $400 cash in his pocket while the other persons had next to, or no, money. Based on Appellant being the only person in the trap house with a large amount of cash in denominations indicative of drug sales, Williams opined Appellant was the dealer selling cocaine in the house while the others were simply users.

After the State concluded its case-in-chief, Appellant opened and rested. Thereafter, the jury convicted Appellant of possession with intent to deliver more than 400 grams of cocaine and sentenced him to confinement for forty years. This appeal followed.

Appellant asserts the State's evidence at trial was insufficient to show he was "in possession" of the cocaine located within the house. He contends he was merely present in the house at the time the warrant was executed. We overrule his single issue.

## STANDARD OF REVIEW

The standards we use for assessing the sufficiency of the evidence are well-established. In evaluating the sufficiency of the evidence supporting a conviction, our inquiry is whether, based on evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Alaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). It is the role of the trier of fact to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from that evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson,* 443 U.S, at 318–19). The trier of fact is the sole judge of credibility of witnesses and the weight, if any, to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). In a sufficiency review, "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13.

## APPLICABLE LAW

Appellant was convicted under section 481.112(f), which provides in pertinent part that an offense under subsection (a) is "punishable [by confinement] for life or for a term of not more than 99 years or less than 15 years . . . if the amount of the controlled substance . . . is by aggregate weight, including adulterants or dilutants, 400 grams or

5

more." TEX. HEALTH & SAFETY CODE ANN. § 481.112(f). Subsection (a) provides "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." *Id.* at § 481.112(a). Cocaine is a Penalty Group 1 controlled substance. *Id.* at § 481.102(3)(D).

In a possession of a controlled substance prosecution, "the State must prove: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Regardless of whether the evidence is direct or circumstantial, it must establish the defendant's connection with the drug was more than fortuitous. *Id.* However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., links), may well be sufficient to establish that element beyond a reasonable doubt. *Id.*

A defendant's mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982)). When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). In *Evans*, the Court summarized a non-exclusive list of fourteen factors that may indicate a link connecting a defendant to the knowing possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the

accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12. Likewise, intent to deliver may also be proven by circumstantial evidence, such as (1) the quantity of drugs possessed, (2) the manner of packaging, (3) the presence of large amounts of money, (4) whether defendant is himself a drug user, and (5) whether there is evidence of drug transactions. *See Gaither v. State*, 383 S.W.3d 550, 553 (Tex. App.—Amarillo 2012, no pet.).

Although these factors can help guide a court's analysis, ultimately, the inquiry under *Jackson* remains whether based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Jackson*, 443 U.S. at 318–19; *Evans*, 202 S.W.3d at 161. Moreover, the absence of certain links is not evidence of innocence to be weighed against the links present. *Luke v. State*, No. 07-17-00199-CR, 2018 Tex. App. LEXIS 8570, at *6 (Tex. App.—Amarillo Oct. 19, 2018, no pet.) (mem. op., not designated for publication). Additionally, expert testimony by experienced law enforcement officers may be used to establish the defendant's intent to deliver. *McNeal v. State*, No. 07-14-00355-CR, 2015 Tex. App. LEXIS 7433, at *6 (Tex. App.—Amarillo July 17, 2015, no pet.) (mem. op., not designated for publication).

ANALYSIS

Here, there was evidence Appellant was one of five persons in a "trap house" designed for the purpose of selling drugs. Of the five persons arrested inside, Appellant was the only person with a large amount of cash—in excess of $400 in denominations indicative of dealing drugs. Only one other occupant had cash—five one-dollar bills. Law enforcement officers identified the remaining persons in the drug house as "users."[5] The prosecution's narcotics expert also opined Appellant was the dealer selling the cocaine found in the "trap house."

Drug paraphernalia typically used in the manufacture and sale of cocaine—Pyrex measuring cup, microwave, razor blades, digital scale, and baggies normally used to package and sell drugs, were also discovered in the house. Importantly, Appellant not only possessed a large amount of cash at the time of the bust but also possessed money from a controlled narcotics purchase staged by law enforcement. He was also the only person in the house with grease from the fryer on his shoes—creating the inference he exercised control and management over the cocaine prior to its attempted destruction in the deep fryer.

Viewing the evidence in the light most favorable to the verdict, we find a rational trier of fact could have found beyond a reasonable doubt Appellant exercised care, custody, control, and management over the contraband and he knew the substance was contraband. The totality of facts and circumstances are sufficient to link Appellant to the contraband in such a manner and to such an extent that a reasonable inference could be

---

[5] There was no evidence Appellant himself used or purchased any cocaine for personal use.

8

made Appellant possessed the contraband found in the "trap house." *See Gabriel v. State,* 842 S.W.2d 328, 330–32 (Tex. App.—Dallas 1992), *aff'd*, 900 S.W.2d 721 (Tex. Crim. App. 1995) (finding sufficient links between defendant and cocaine where defendant found in "trap house" near cocaine, $80 found in his pocket consistent with type of bills used to purchase cocaine, and he had an implausible, refutable reason for being on the premises).

Moreover, the quantity of the drug possessed, the presence of a large amount of money on his person, and the presence of paraphernalia used to package and sell drugs in the "trap house," created a reasonable inference from which a rational trier of fact could have found beyond a reasonable doubt that Appellant intended to deliver a controlled substance. We overrule Appellant's single issue.

## CONCLUSION

The trial court's judgment is affirmed.

Alex L. Yarbrough<br>
Justice

Do not publish.